No. 24-20483

In the United States Court of Appeals for the Fifth Circuit

JENNIFER BRIDGES; BREANN EMSHOFF; AMANDA LOFTON; BRETT COOK; STEFANIE MARTINEZ; ET AL,

*Plaintiffs-Appellants,*

*v.*

THE METHODIST HOSPITAL, doing business as THE METHODIST HOSPITAL SYSTEM; HOUSTON METHODIST THE WOODLANDS HOSPITAL; METHODIST HEALTH CENTERS, doing business as HOUSTON METHODIST BAYTOWN HOSPITAL, doing business as HOUSTON METHODIST SUGAR LAND HOSPITAL, doing business as HOUSTON METHODIST THE WOODLANDS HOSPITAL, doing business as HOUSTON METHODIST WILLOWBROOK HOSPITAL; MARC L. BOOM; ROBERT A. PHILLIPS; ET AL,

*Defendants-Appellees.*

On Appeal from the United States District Court-Southern District of Texas
No. 4:23-cv-1699, Hon. George C. Hanks, Jr.

**BRIEF OF HOUSTON METHODIST APPELLEES**

YETTER COLEMAN LLP
Constance H. Pfeiffer
Christian J. Ward
Andrew T. Ingram
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000

*Counsel for Houston Methodist Appellees*

# CERTIFICATE OF INTERESTED PERSONS

No. 24-20483

JENNIFER BRIDGES; BREANN EMSHOFF; AMANDA LOFTON; BRETT COOK; STEFANIE MARTINEZ; ET AL,

*Plaintiffs-Appellants,*

*v.*

THE METHODIST HOSPITAL, DOING BUSINESS AS THE METHODIST HOSPITAL SYSTEM; HOUSTON METHODIST THE WOODLANDS HOSPITAL; METHODIST HEALTH CENTERS, DOING BUSINESS AS HOUSTON METHODIST BAYTOWN HOSPITAL, DOING BUSINESS AS HOUSTON METHODIST SUGAR LAND HOSPITAL, DOING BUSINESS AS HOUSTON METHODIST THE WOODLANDS HOSPITAL, DOING BUSINESS AS HOUSTON METHODIST WILLOWBROOK HOSPITAL; MARC L. BOOM; ROBERT A. PHILLIPS; ET AL,

*Defendants-Appellees.*

The undersigned counsel of record certifies the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate their possible recusal or disqualification:

1.      Defendants-Appellees The Methodist Hospital, doing business as Methodist Hospital System; Houston Methodist The Woodlands Hospital; Methodist Health Centers, doing business as Houston Methodist Baytown Hospital, doing business as Houston Methodist Sugar Land Hospital, doing business as Houston Methodist The Woodlands Hospital, Houston Methodist Willowbrook Hospital; Marc L. Boom, M.D.; Robert A. Phillips, MD, Phd, FACC; and Voting

Board Members Carlton E. Baucum; John F. Bookout; Emily A. Crosswell; Mary A. Daffin; Martha S. DeBusk; Gary W. Edwards; Juliet S. Ellis; Mark A. Houser; Bishop Scott Jones; Rev. Kenneth R. Levingston; Vidal G. Martinez; Constance M. Mobley, M.D., Ph.D.; W. Benjamin Moreland; Gregory V. Nelson; Dr. Thomas J. Pace, III; Joe Bob Perkins; Dr. Edmund W. Robb, III; Stuart L. Solomon, M.D.; Douglas E. Swanson, Jr.; Spencer A. Tillman; David M. Underwood, Jr.; Joseph C. "Rusty" Walter, III; Elizabeth Blanton Wareing; and the Hon. Ewing Werlein, Jr. (collectively, "Houston Methodist Appellees") are represented in the Fifth Circuit by:

> Constance H. Pfeiffer
> Christian J. Ward
> Andrew T. Ingram
> YETTER COLEMAN LLP
> 811 Main Street, Suite 4100
> Houston, Texas 77002
> (713) 632-8000

Additional counsel who represented the Houston Methodist Appellees in the district-court proceedings are:

> Daniel F. Patton
> Dwight W. Scott, Jr.
> Michael K. Burke
> Kirby Lodholz
> Michelle N. Mathews
> Patrick M. Palmer II
> SCOTT PATTON PC
> 5301 Katy Freeway, Suite 201

Houston, Texas 77007
dpatton@scottpattonlaw.com

2.      Plaintiffs-Appellants Jennifer Bridges; Breann Emshoff; Amanda Lofton; Brett Cook; Stefanie Martinez; Ceranise Alcindor; Rosemarie Aldaya; Sandra Altamirano; Dina Amaya; Scott Anderson; Judith Andriko; Mary Apacway; Dajuana Armstrong; Kim Bane; Edna Barrera; Debra Baugh; Latricia Blank; James Borje; Laura Bowden; Savannah Brazil; John Brockus; Katherine Brol; Monika Bury; Amanda Castro; Patrick Charles; Tameka Clark; Brian Clegg; Sherry Colbert; De'Anna Conway; JoAnn Crump-Creamer; Zoretta Curry; Julie DeTorre; Sierra Dockray; Stephanie Dunlap; Manuel Elizondo; Celina Elvir; Brian Felgere; Elizabeth Flores; Rebekah Fontenot; Michelle Fuentes; Gerardo Garza; Aquarius Grady; Cedrick Green; Ashton Hanley; Tara Hansen; Stacey Hanzelka; Tanisha Hatchet; Starla Haugenater; Philip Herin; Shauna Herin; Jade Hernandez; Luz Hernandez; Sharon Hollier; Walter Infantes; Dana Janoch; Jason Jimenez; John Lasseigne; Ashlee Leon-Lewis; Shayna Lincoln; Bennie Lopez; Stacey Martinez; Brian Matthews; James McCann; Becky Melcer; Rogelio Mendez, Jr.; Kimberly Mikeska; Norma Miller; Yolunda Milton; Ahmed Montgomery; Robert Morin; Thomas Mulkey; Bob Nevens; Linda Pickard; McKenli Pinkney; Jonae Powell; Juan Ramirez; Averi Reed; Kimberly Rensi; Amanda Rivera; Peejayé Robins; Maria Rodriguez; Betty Samuel; Diana Sanchez; Giovanni Savans; Leevetra Seals; Maria

Serrano; Kara Shepherd; Mandy Sisto; Nicole Smith; Talisha Smith; Anna Luz Soberano-Hathorn; Mary Louise Stephens; Freenea Stewart; Karene Tanner; Kelly Tate; Shelby Thimons; Paige Thomas; Kaylan Timmons; Kathy Tofte; Derek Trevathan; Maria Trevino; Terah Trevino; Charles Varghese; Brandi Vincent; Mathea Volesky; Jennifer Warren; Alexandra Williams; Karen Witt; Kidist Woldergabriel; Latasha Woods; Katie Yarber; and Ricardo Zelante are represented in the Fifth Circuit by:

> David Joseph Schexnaydre
> SCHEXNAYDRE LAW FIRM, LLC
> 2895 Hwy 190, Suite 212
> Mandeville, Louisiana 70471
> david@schexnaydre.com

Counsel who represented Plaintiffs-Appellants in the district-court proceedings are:

> Roger B. Borgelt
> BORGELT LAW
> 614 S. Capital of Texas Hwy.
> Austin, Texas 78746
> 512-600-3467
> roger@borgeltlaw.com

Defendants-Appellees Cecile Erwin Young and Bryan Daniel are represented in the Fifth Circuit and were represented in the district court proceedings by:

> Joseph Keeney, Assistant Attorney General
> OFFICE OF THE ATTORNEY GENERAL OF TEXAS
> P.O. Box 12548

Capitol Station MCO19
Austin, Texas 78711
joseph.keeney@oag.texas.gov

*/s/ Constance H. Pfeiffer*
Constance H. Pfeiffer
*Attorney of record for Appellees*
*The Methodist Hospital, doing business as The Methodist Hospital System; Houston Methodist The Woodlands Hospital; Methodist Health Centers, doing business as Houston Methodist Baytown Hospital, doing business as Houston Methodist Sugar Land Hospital, doing business as Houston Methodist The Woodlands Hospital, Houston Methodist Willowbrook Hospital; Marc L. Boom; Robert A. Phillips; et al.*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not likely to assist the Court's decisional process. Under well-settled law, there are multiple independently sufficient grounds to affirm the district court's dismissal of plaintiffs' federal claims.

## TABLE OF CONTENTS

PAGE

Certificate of Interested Persons ................................................. 2

Statement Regarding Oral Argument ........................................... 7

Table of Authorities ................................................................ 10

Statement of Issues for Review ..................................................17

Introduction ........................................................................... 18

Statement of the Case ............................................................. 20

Summary of the Argument ....................................................... 26

Standard of Review .................................................................. 29

Argument ............................................................................... 29

I.    Plaintiffs Identify No Statute or Regulation Providing Them a Private
      Right of Action ................................................................ 29

      A.    The statutes and regulations govern the administration of
            experimental treatments, not employment. ...................... 32

      B.    The statutes and regulations are not enforceable by Section
            1983 .......................................................................... 38

            1.    21 U.S.C. §360bbb-3 is not a rights-conferring statute. ........... 38

            2.    The PREP Act is not a rights-conferring statute ...................... 39

            3.    10 U.S.C. §980 is not a rights-conferring statute .................... 41

            4.    Regulations never create enforceable rights. .......................... 42

      C.    21 U.S.C. §360bbb-3 provides no private right of action. ................. 44

II.   Plaintiffs' Claims Are Not Directed at State Action. .................................. 46

      A.    Houston Methodist did not act under color of state law. ................... 47

B.    Simply participating in a government program did not make Houston Methodist a state actor. ........................................ 51

C.    If Houston Methodist were considered a state actor, claims against it would be barred under qualified immunity. ....................... 53

III.    Plaintiffs Fail to State Claims for Violation of Constitutional Rights. .......... 55

A.    Plaintiffs fail to state due process claims. ........................................... 56

1.    Plaintiffs have no protected interest in at-will employment. ............................................................. 57

2.    There is no fundamental right to refuse vaccination without consequence. ............................................... 59

B.    Plaintiffs fail to state an equal protection claim. ............................... 62

IV.    Plaintiffs May Not Keep Relitigating Their Claims Piecemeal. .................. 65

A.    Res judicata bars claims by the 72 *Bridges I* plaintiffs. ....................... 65

1.    Parties identical or in privity. ...................................... 66

2.    Judgment by court of competent jurisdiction ......................... 67

3.    Judgment on the merits ............................................. 67

4.    Same nucleus of operative facts ..................................... 67

B.    Plaintiffs cannot split their claims among multiple suits. .................. 68

V.    The District Court Correctly Dismissed with Prejudice. ........................... 70

Conclusion .......................................................................................................... 72

Certificate of Service .......................................................................................... 74

Certificate of Compliance .................................................................................. 75

# Table of Authorities

**Page(s)**

## Cases

*Aldridge v. Miss. Dep't of Corr.*,
990 F.3d 868 (5th Cir. 2021) .......................................................... 70, 71

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ........................................................................ 43

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) .......................................................................... 48

*Arnold v. Williams*,
979 F.3d 262 (5th Cir. 2020) ............................................ 29, 35, 46, 53

*Ashcroft v. al–Kidd*,
563 U.S. 731 (2011) ........................................................................ 54

*Baldwin v. Daniels*,
250 F.3d 943 (5th Cir. 2001) .......................................................... 57

*Bank of N.Y. Mellon v. Riley*,
2022 WL 1773364 (5th Cir. June 1, 2022) ...................................... 68

*Bass v. Parkwood Hosp.*,
180 F.3d 234 (5th Cir. 1999) .......................................................... 51

*Bd. of Regents of State Colls. v. Roth*,
408 U.S. 564 (1972) ........................................................................ 57

*Biden v. Missouri*,
595 U.S. 87 (2022) .......................................................................... 64

*Big Tyme Invs., L.L.C. v. Edwards*,
985 F.3d 456 (5th Cir. 2021) .......................................................... 60

*Bird v. Martinez-Ellis*,
2022 WL 17973581 (10th Cir. Dec. 28, 2022) ............................. 39, 44

*Blum v. Yaretsky*,
  457 U.S. 991 (1982) ......................................................... 48, 49, 51, 52

*Bridges v. Houston Methodist Hosp.*,
  543 F.Supp.3d 525 (S.D. Tex. 2021), *aff'd*, 2022 WL 2116213 (5th
  Cir. June 13, 2022) ......................................................................... 45, 64

*Bridges v. Methodist Hosp.*,
  No. 21-20311, 2022 WL 2116213 (5th Cir. June 13, 2022) ............... 23, 55, 67, 68

*Brock v. City of Bellingham*,
  2025 WL 254725 (W.D. Wash. Jan. 21, 2025) ................................... 32

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ...................................................................*passim*

*Cannon v. Univ. of Chi.*,
  441 U.S. 677 (1979) ....................................................................... 31, 45

*Children's Health Def., Inc. v. Rutgers*,
  93 F.4th 66 (3d Cir. 2024) ....................................................... 34, 38, 55

*Ciraci v. J.M. Smucker Co.*,
  2021 WL 6064748 (N.D. Ohio Dec. 22, 2021) .................................. 34

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) ....................................................................... 63

*Conroe Creosoting Co. v. Montgomery Cnty., Tex.*,
  249 F.3d 337 (5th Cir. 2001) ........................................................... 57

*Cornish v. Corr. Servs. Corp.*,
  402 F.3d 545 (5th Cir. 2005) .................................................... 47, 48, 49

*Cruzan v. Dir., Missouri Dep't of Health*,
  497 U.S. 261 (1990) ....................................................................... 62

*Curtis v. PeaceHealth*,
  2024 WL 248719 (W.D. Wash. Jan. 23, 2024) .................................. 32

*Federated Dep't Stores, Inc. v. Moitie*,
  452 U.S. 394 (1981) ....................................................................... 67

*Filarsky v. Delia*,
566 U.S. 377 (2012) ........................................................................ 53

*Fitzgerald v. Barnstable Sch. Comm.*,
555 U.S. 246 (2009) ................................................................... 40, 41

*Gentilello v. Rege*,
627 F.3d 540 (5th Cir. 2010) ............................................ 57, 58, 59, 72

*Gilbert v. Donahoe*,
751 F.3d 303 (5th Cir. 2014) ......................................................... 29

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002) ............................................... 31, 39, 42, 44

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) ......................................................... 71

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
599 U.S. 166 (2023) ....................................................................... 44

*Health Freedom Defense Fund, Inc. v. Carvalho*,
104 F.4th 715 (9th Cir. 2024), *reh'g en banc granted, opinion vacated*,
127 F.4th 750 (Feb. 4, 2025) ................................................. 60, 61

*Hughes v. Terminix Pest Control, Inc.*,
2024 WL 3440465 (5th Cir. July 17, 2024) ............................... 39, 40

*Jackson v. Metro. Edison Co.*,
419 U.S. 345 (1974) ....................................................................... 51

*Jacobson v. Massachusetts*,
197 U.S. 11 (1905) ................................................................... 60, 61

*Jacquez v. Procunier*,
801 F.2d 789 (5th Cir. 1986) ......................................................... 72

*Johnson v. Housing Auth.*,
442 F.3d 356 (5th Cir. 2006) ................................................ 31, 32, 39

*Johnson v. Kotek*,
2024 WL 747022 (9th Cir. Feb. 23, 2024) ...................................... 39

*Julapalli v. Boom,*
    2025 WL 314123 (5th Cir. Jan. 28, 2025) ................................. 47, 48, 55

*Kirchberg v. Feenstra,*
    708 F.2d 991 (5th Cir. 1983) ........................................................... 31

*Kiss v. Best Buy Stores,*
    2022 WL 17480936 (D. Or. Dec. 6, 2022) ........................................ 45

*Klaassen v. Trs. of Ind. Univ.,*
    7 F.4th 592 (7th Cir. 2021) .................................................... *passim*

*Lindke v. Freed,*
    601 U.S. 187 (2024) .................................................................. 47, 56

*Maney v. Brown,*
    91 F.4th 1296 (9th Cir. 2024) ......................................................... 40

*Manyweather v. Woodlawn Manor, Inc.,*
    40 F.4th 237 (5th Cir. 2022) ..................................................... 35, 40

*Matter of Super Van Inc.,*
    92 F.3d 366 (5th Cir. 1996) ........................................................... 68

*McCutcheon v. Enlivant ES, LLC,*
    2021 WL 5234787 (S.D.W. Va. Nov. 9, 2021) ................................. 34

*Mitchell v. Advanced HCS, L.L.C.,*
    28 F.4th 580 (5th Cir. 2022) ..................................................... 40, 41

*Mullenix v. Luna,*
    577 U.S. 7 (2015) ........................................................................... 54

*Muncy v. City of Dallas,*
    335 F.3d 394 (5th Cir. 2003) ..................................................... 58, 59

*N.Y. Life Ins. Co. v. Gillispie,*
    203 F.3d 384 (5th Cir. 2000) ................................................. 66, 67, 68

*Nordlinger v. Hahn,*
    505 U.S. 1 (1992) ..................................................................... 63, 64

*Norris v. Stanley*,
    73 F.4th 431 (6th Cir. 2023) ...................................................... 34, 35, 55

*Oliney v. Gardner*,
    771 F.2d 856 (5th Cir. 1985) ........................................................ 69, 70

*Pearson v. Callahan*,
    555 U.S. 223 (2009) .........................................................................53, 54

*Pearson v. Shriners Hosps. for Children*,
    736 F.Supp.3d 521 (S.D. Tex. 2024) ...........................................47, 58

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*,
    9 F.4th 247 (5th Cir. 2021).................................................................. 29

*POM Wonderful LLC v. Coca-Cola Co.*,
    573 U.S. 102 (2014).............................................................................. 45

*Ramirez v. Escajeda*,
    44 F.4th 287 (5th Cir. 2022) ............................................................... 54

*Rendell–Baker v. Kohn*,
    457 U.S. 830 (1982).......................................................................48, 52

*Rhoades v. Savannah River Nuclear Sols., LLC*,
    2021 WL 5761761 (D.S.C. Dec. 3, 2021) ........................................... 34

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
    833 F.3d 512 (5th Cir. 2016).........................................................65, 66

*SO Apartments, L.L.C. v. City of San Antonio*,
    109 F.4th 343 (5th Cir. 2024)...............................................................61

*Spencer v. Lee*,
    864 F.2d 1376 (7th Cir. 1989) ............................................................ 50

*Stoneburner v. Sec'y of the Army*,
    152 F.3d 485 (5th Cir. 1998)............................................................... 62

*Sw. Bell Tel., LP v. City of Houston*,
    529 F.3d 257 (5th Cir. 2008) ...................................................32, 39, 42

*Sweeney v. Univ. of Colo. Hosp. Auth.*,
   2024 WL 3713835 (D. Colo. July 12, 2024) ...................................................... 42

*Taylor v. City of Shreveport*,
   798 F.3d 276 (5th Cir. 2015) .................................................................................. 29

*Test Masters Educ. Servs. v. Singh*,
   428 F.3d 559 (5th Cir. 2005) .................................................................................. 66

*Tex. Emps.' Ins. Ass'n v. Jackson*,
   862 F.2d 491 (5th Cir. 1988) .................................................................................. 68

*Thurman v. Med. Transp. Mgmt., Inc.*,
   982 F.3d 953 (5th Cir. 2020) ........................................................................ *passim*

*U.S. ex rel. Doe v. Dow Chem. Co.*,
   343 F.3d 325 (5th Cir. 2003) ......................................................................... 70, 71

*Washington v. Glucksberg*,
   521 U.S. 702 (1997) ................................................................................................. 62

*We The Patriots USA, Inc. v. Hochul*,
   17 F.4th 266 (2d Cir. 2021) .................................................................................... 55

*West v. Atkins*,
   487 U.S. 42 (1988) ................................................................................................... 47

*Williams v. Bramer*,
   180 F.3d 699 (5th Cir. 1999) .................................................................................. 62

*Wong v. Stripling*,
   881 F.2d 200 (5th Cir. 1989) .................................................................................. 50

## STATUTES

10 U.S.C. §980 ............................................................................................... *passim*

10 U.S.C. §980(a) ........................................................................................... 35, 41

21 U.S.C. §337(a) .................................................................................................. 45

21 U.S.C. §360bbb-3 ..................................................................................... *passim*

21 U.S.C. §360bbb-3(a) ............................................................. 33

21 U.S.C. §360bbb-3(e)(1)(A) ............................................... 34, 38

42 U.S.C. §247d-6d ................................................................ *passim*

42 U.S.C. §247d-6d(a)(1) ........................................................ 35

42 U.S.C. §247d-6e(b) ............................................................ 40

42 U.S.C. §247d-6e(d)(1) ........................................................ 41

42 U.S.C. §247d-6e(d)(1) ........................................................ 41

42 U.S.C. §247d-6e(d)(4) ........................................................ 41

42 U.S.C. §247d-6e(e)(1) ........................................................ 41

42 U.S.C. §1983 ...................................................................... *passim*

## OTHER AUTHORITIES

41 C.F.R. §46.101 ................................................................ 36, 68

41 C.F.R. §46.102 ................................................................ 68

41 C.F.R. §46.116 ......................................................... 33, 36, 43, 68

45 C.F.R. §46.122 ................................................................ 43

*The Belmont Report*, https://www.hhs.gov/ohrp/regulations-and-
    policy/belmont-report/index.html .................................. 43

## STATEMENT OF ISSUES FOR REVIEW

1. Did the district court correctly dismiss plaintiffs' federal claims under Rule 12(b)(6) for multiple independently sufficient grounds, including:

   a. Plaintiffs identify no statute or regulation providing them a private right of action for their claims challenging Houston Methodist's COVID-19-related employment policy.

   b. Plaintiffs challenge the employment policy of a private employer engaging in private conduct and thus cannot satisfy the state-action element of a Section 1983 or constitutional claim, as a panel of this Court recently held regarding Houston Methodist's own COVID-19 vaccination policy.

   c. Even if Houston Methodist were a state actor, it would be entitled to qualified immunity.

   d. Plaintiffs state no cognizable constitutional claims because they have no protected property or liberty interest in at-will employment or fundamental right to refuse vaccination without consequence and cannot show that Houston Methodist treated similarly situated persons differently or made an irrational classification.

2. At a minimum, did the district court correctly dismiss most plaintiffs' claims when they are barred by res judicata, or the rule against claim-splitting, or both?

3. Did the district court act within its discretion in dismissing with prejudice when plaintiffs never even requested leave to further amend their complaint and, in any event, amendment would be futile because the complaint's legal defects were incurable?

## INTRODUCTION

Except where necessary to distinguish the parties, the Houston Methodist Appellees can be referred to generally as Houston Methodist. As a private hospital system, Houston Methodist exercised its right as a private employer to require its at-will employees to be vaccinated, subject to exemptions based on religion and medical condition in conformity with the ADA and Title VII. After Houston Methodist exercised its right to terminate plaintiffs' employment pursuant to this policy, plaintiffs sued, alleging violation of their rights under the Constitution and a multitude of federal statutes that regulate medical research.

But none of the pleaded theories provides rights for damages or continued employment for people who elect not to comply with their workplace vaccine policy. The federal statutes and regulations that plaintiffs cite do not provide a private cause of action. Nor do these statues and regulations provide a right enforceable under Section 1983. Plaintiffs fail to reckon with the fact that Houston Methodist is not a state actor that can be sued under Section 1983. And they ignore that even if they could overcome these obstacles to suing Houston Methodist under Section 1983, Houston Methodist would be protected against their novel theories by qualified immunity.

Houston Methodist is a private, nonprofit hospital that is presumptively free to hire or fire its employees as it thinks best to carry out its health care mission. Exercising its considerable health care expertise to decide how best to run its private hospitals, Houston Methodist decided that it could best serve and protect its patients, workers, and the community by requiring its workers to be vaccinated. Congress has limited which federal statutes create a cause of action and so has not given plaintiffs or federal courts the power to supervise the actions of private employers like Houston Methodist through lawsuits.

Plaintiffs make little or no effort in their brief to explain how they can overcome these doctrinal obstacles to their lawsuit. Instead, plaintiffs launch voluminous, rhetorically charged arguments about the legal designation of the COVID-19 vaccine, and they wax eloquent on the reasons that Congress passed laws to protect informed consent in medical research. These arguments, however, do nothing to show that the district court erred by finding that plaintiffs do not have a cause of action upon which to sue Houston Methodist. Indeed, plaintiffs barely address the district court's stated grounds for dismissing their lawsuit for failure to state a claim, much less the several alternative and sufficient grounds presented by Houston Methodist in its motion to dismiss but left unaddressed by the district court. Each of these is a sufficient reason for this Court to affirm.

## STATEMENT OF THE CASE

The Houston Methodist defendants-appellees are The Methodist Hospital, d/b/a The Methodist Hospital System and affiliated entities and individuals. ROA.913-14. Entity defendants include Houston Methodist The Woodlands Hospital and hospitals in other Texas cities. ROA.913. The Houston Methodist system is one of the nation's leading hospital systems. *See, e.g.*, ROA.977.

Individual defendants include Dr. Marc Boom, M.D., the President and Chief Executive Officer of Houston Methodist; Dr. Robert A. Phillips, M.D., Ph.D., FACC, Houston Methodist's former Executive Vice President & Chief Physician Executive and President and CEO of Houston Methodist Physician Organization; and all members of Houston Methodist's Board of Directors, including United States District Judge Ewing Werlein Jr., who is Senior Chair of the Board. ROA.913-914.

Most of the 112 plaintiffs-appellants are former employees of Houston Methodist who were terminated after declining to comply with Houston Methodist's COVID-19 vaccination policy. ROA.898-913.

Plaintiffs also sued Cecile Erwin Young, Commissioner of the Texas Department of Health and Human Services, and Bryan Daniel, Chairman of the Texas Workforce Commission. ROA.889.

The district court dismissed the claims against Houston Methodist on its Rule 12(b)(6) motion. Thus, facts recited in this statement are as alleged in the pleadings.

### Facts Alleged

In 2021, Houston Methodist adopted a policy requiring its employees to be vaccinated against COVID-19, subject to religious and medical exemptions. ROA.990-92. Houston Methodist issued this policy because it judged that doing so would "create a safe environment, free of infection/transmission of disease" and would "protect [its] patients, employees, and the community from SARS-CoV-2 (COVID-19) infection." ROA.990-91. Houston Methodist informed employees about the policy, putting them on notice that they would be placed on unpaid suspension, then terminated, if they did not comply with its vaccination rule. ROA.990-92.

Houston Methodist's rule separated workers into two phases with different deadlines to receive the vaccination or request an exemption. ROA.991-92. Under the policy, to avoid termination, first-phase employees had to be vaccinated or qualify for an exemption within a month. ROA.991. Second-phase employees generally had nearly three months to get vaccinated (with possible extensions for individuals who timely applied for exemptions but were denied them). ROA.991-92.

All employees had an opportunity to submit requests for religious or medical exemptions. ROA.991-92.

Although Houston Methodist was a provider of COVID-19 vaccines, ROA.971, its policies for employees and contractors did not require them to receive the vaccine from Houston Methodist. *See* ROA.990-92 (reproducing policy). "Plaintiffs do not allege that any defendant directly administered the vaccine to them." ROA.1797.

Indeed, while plaintiffs characterize Houston Methodist's policy as subjecting them "to investigational drug use under threat of penalty outside of their free will and voluntary consent," ROA.897, the vast majority—105 of 112 plaintiffs—never received any COVID-19 vaccination. *See* ROA.898-913. Of the seven plaintiffs who allege they got the vaccine, *none* alleges getting it *from* Houston Methodist. *See* ROA.898-913.

Most of the plaintiffs—103—are former employees whose essential complaint is that they were terminated or constructively terminated for refusing to get vaccinated. *See* ROA.898-913. The five employees who received the vaccine (from unidentified providers) are still employed by Houston Methodist. *See* ROA.904, 906, 911-12. The remaining four plaintiffs were contractors (three vendors and a physician) who allege that their respective privileges were terminated. ROA.901,

903, 906, 908. No plaintiff has pleaded that he or she requested an exemption that was denied. *See generally* ROA.898-913.

### *Procedural History*

Jennifer Bridges and 71 other plaintiffs in this suit first sued over Houston Methodist's COVID-19 policy in May 2021. ROA.486-88; *see also Bridges v. Methodist Hosp.*, No. 21-20311, 2022 WL 2116213 (5th Cir. June 13, 2022) (*Bridges I*). As here, in *Bridges I*, "Plaintiffs, former employees of HM [i.e., Houston Methodist], allege that they were fired or were going to be fired for refusing to receive the COVID-19 vaccine, as required by the policy. They sued HM for violations of federal law and regulations and for wrongful discharge under Texas law." 2022 WL 2116213, at *1. The plaintiffs' claims in *Bridges I* were dismissed under Rule 12(b)(6) for failure to state a claim, and this Court affirmed that order in June 2022. *Id.*

In December 2022, 21 people represented by *Bridges I* plaintiffs' counsel filed federal lawsuits against Houston Methodist in the Southern District of Texas alleging religious discrimination claims relating to the COVID-19 employment policy. ROA.726-813. Nineteen of those plaintiffs are also plaintiffs here, and 13 of those were also *Bridges I* plaintiffs. *See* ROA.726-813. District Judge Andrew Hanen consolidated these suits into a single action before him in March 2023. ROA.815-16.

Bridges and 111 other plaintiffs filed this suit after *Bridges I* had been fully adjudicated to a final judgment affirmed on appeal and while the consolidated discrimination action was already pending. ROA.58-84. Thus, 78 of the 112 plaintiffs in this case already had COVID-19-policy-related claims against Houston Methodist adjudicated in *Bridges I* or were already pursuing such claims in another action, or both.

Plaintiffs filed this suit in Montgomery County, Texas in April 2023. ROA.57-84. The original petition named only two hospital entities as defendants: The Methodist Hospital and Houston Methodist The Woodlands Hospital. ROA.58-62. After Houston Methodist removed the suit to federal court, ROA.49-55, plaintiffs then amended their complaint, adding multiple Houston Methodist subsidiary entities, executives, and board members to their lawsuit. ROA.223-24.[1] Plaintiffs also sued the Texas Workforce Commission, the Texas Department of Health and

---

[1] Plaintiffs added Houston Methodist Willowbrook Hospital; Houston Methodist Sugarland Hospital; Houston Methodist Baytown Hospital; Dr. Boom; Dr. Phillips; and the 24 members of Houston Methodist's Board of Directors: Carlton Baucum, John Bookout, Emily Crosswell, Mary Daffin, Martha DeBusk, Gary Edwards, Juliet Ellis, Mark Houser, Bishop Scott Jones, Rev. Kenneth Levingston, Vidal Martinez, Dr. Constance Mobley, W. Benjamin Moreland, Gregory Nelson, Dr. Thomas Pace III, Joe Bob Perkins, Dr. Edmund Robb III, Dr. Stuart Solomon, Douglas Swanson Jr., Spencer Tillman, David Underwood Jr., Joseph "Rusty" Walter III, Elizabeth Blanton Wareing, and the Hon. Ewing Werlein Jr. ROA.223-24.

Human Services, and the Texas Medical Board for the first time in their amended pleading. ROA.224.

The Houston Methodist defendants filed a Rule 12(b)(6) motion to dismiss all claims against them. ROA.429. Plaintiffs filed an opposition, ROA.1031, and Houston Methodist filed a reply, ROA.1287. While Houston Methodist's motion was pending, plaintiffs filed their Second Amended Complaint, which amended their pleadings against Texas state government defendants. *See* ROA.856-57. But plaintiffs stipulated that the new complaint would not alter or amend any claims against Houston Methodist and that Houston Methodist's motion would apply to the new complaint. ROA.886-87. The Texas state government defendants also moved to dismiss under Rules 12(b)(1) and 12(b)(6). ROA.1604-37.

On September 30, 2024, the district court entered an order dismissing all federal claims against the Houston Methodist and state government defendants. ROA.1789-807. The district court declined to exercise supplemental jurisdiction over plaintiffs' state law claims and remanded those to the Texas state court. ROA.1807. Plaintiffs appealed. ROA.1808-11.

The district court issued an opinion agreeing with Houston Methodist that (1) the federal statutes and regulations plaintiffs rely upon do not provide for a private cause of action, (2) the statutes did not create rights actionable under Section

1983, (3) plaintiffs failed to allege constitutional violations under the Equal Protection or Due Process Clauses, and, in any event, (4) plaintiffs failed to allege any way in which their termination by Houston Methodist, a private employer, constituted state action. ROA.1792-1805 & n.4.

The district court's order addressed only some of the decisive arguments that Houston Methodist briefed in its motion to dismiss because it was unnecessary to reach every basis for dismissal. In arguments that the district court did not address, Houston Methodist further argued that (1) even if Section 1983 did apply, Houston Methodist would be protected by qualified immunity, (2) plaintiffs' claims were time-barred by the statute of limitations, (3) the *Bridges I* plaintiffs' claims were barred by res judicata, and (4) the discrimination-suit plaintiffs had violated the rule against claim splitting by pursuing separate federal actions concurrently. ROA.447-59, 480.

## Summary of the Argument

None of the myriad statutes or regulations upon which plaintiffs rely supplies them with a private right of action for their claims against Houston Methodist. No plaintiffs were administered a COVID-19 vaccine by Houston Methodist, and the gravamen of their complaint is that Houston Methodist's employment policy was somehow unlawful.

None of the provisions plaintiffs cite applies to plaintiffs' claims because none governs employment. Even if they did apply, none creates a private right of action or relevant federal rights enforceable through 42 U.S.C. §1983.

Plaintiffs' claims also fail for the independently sufficient reason that they are not directed at state action. Section 1983 and constitutional claims cannot be based on private conduct. Houston Methodist is a private hospital, and plaintiffs' claims implicate only its private conduct in implementing an employment policy. Applying precedent holding that a private employer's employment-related decisions constitute private conduct even if the employer also engages in state action, a panel of this Court recently expressly held that Houston Methodist's vaccination policy was private conduct, not state action. And even if Houston Methodist's role as a vaccine provider were relevant to plaintiffs' claims, which it is not, Houston Methodist is not a state actor in that role either. Regardless, if Houston Methodist were a state actor, it would have qualified immunity for the conduct alleged.

Further, in addition to failing because Houston Methodist is not a state actor, plaintiffs' constitutional due process and equal protection claims also fail because plaintiffs cannot establish other essential elements of such claims. Plaintiffs have no constitutionally protected interest in at-will employment or a fundamental right to avoid vaccination as a condition of employment, negating their claims for procedural

or substantive due process. And their equal protection claims fail because plaintiffs do not allege that they were treated differently from similarly situated persons or a classification made with no rational basis.

At a minimum, res judicata and the related rule against splitting claims bar the claims of most plaintiffs here. Of the 112 plaintiffs, claim preclusion bars 72 because they were also plaintiffs in prior litigation based on the same nucleus of operative facts—Houston Methodist's COVID-19 vaccination policy—in which they raised or could have raised the same claims and theories. This Court affirmed dismissal under Rule 12(b)(6) nearly a year before this suit was filed. And 19 plaintiffs here—including 13 who were also plaintiffs in the prior suit—are violating the rule against claim splitting by simultaneously pursuing additional federal suits over Houston Methodist's policy. Their later-filed claims in this suit are subject to dismissal for this reason.

Finally, the district court did not abuse its discretion by dismissing with prejudice. Plaintiffs, who had already amended their complaint multiple times, never requested leave to further amend and thus waived it. In any event, plaintiffs' claims are so legally defective that further amendment would be futile.

## STANDARD OF REVIEW

The Court reviews orders granting Rule 12(b)(6) motions to dismiss for failure to state a claim de novo. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 253 (5th Cir. 2021). The Court accepts all facts alleged in the complaint as true but does not accept conclusory allegations, unwarranted factual inferences, or legal conclusions. *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020).

The Court may affirm on any basis supported by the record. *Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015). In this case, the district court dismissed plaintiffs' claims based on some but not all of the dispositive grounds raised in the motion. The Court is not confined to the grounds addressed by the district court and may affirm based on arguments that the district court did not reach. *See Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014) ("Under our precedent, we may affirm on any ground supported by the record, including one not reached by the district court.") (citations and internal quotation marks omitted)).

## ARGUMENT

### I.    Plaintiffs Identify No Statute or Regulation Providing Them a Private Right of Action.

The district court correctly concluded that none of the statutes or regulations cited by plaintiffs is enforceable through a private right of action. Plaintiffs present their claims as rooted in supposed obligations on providers of "investigational

drugs," *e.g.*, Op. Br. 9, yet the gravamen of their complaint is that the employment policy under which Houston Methodist terminated most of the plaintiffs is somehow unlawful. *See, e.g.*, ROA.1012 (identifying plaintiffs' alleged damages as primarily employment-related, *e.g.*, lost pay and benefits, lost vacation time, and the like).[2]

The statutory and regulatory provisions that plaintiffs rely upon are inapposite because they relate to providers. None of them regulates the relationships of employers and employees. And none is enforceable through a private cause of action, whether implied or via 42 U.S.C. §1983.

Plaintiffs brought most of their federal claims under Section 1983. ROA.1005-11. One claim was brought under a purported implied private right of action in 21 U.S.C. §360bbb-3. ROA.1011. As discussed further below and as held by the district court, plaintiffs' Section 1983 claims fail for the independently sufficient reason that plaintiffs do not plausibly allege relevant "state action" by private hospital Houston Methodist. But, as the district court correctly determined, all of plaintiffs' federal claims also fail at the outset because no law creates relevant federal rights enforceable through either Section 1983 or a private right of action.

---

[2] Four plaintiffs—three vendors and a physician—were contractors, not Houston Methodist at-will employees, and thus have no legal or logical basis to contend that Houston Methodist was required to contract with them. Because plaintiffs' brief contains no argument specific to vendors, physicians, or other contractors, Houston Methodist focuses its argument on the claims of plaintiffs who were employees.

- 30 -

The district court correctly held that none of the pleaded statutes and regulations support cognizable claims via Section 1983 and that 21 U.S.C. §360bbb-3 provided plaintiffs with no implied private right of action. ROA.1793-1801.

"Section 1983 confers no substantive rights, but merely provides a remedy for the violation of rights secured under the Constitution and laws of the United States." *Kirchberg v. Feenstra*, 708 F.2d 991, 1000 (5th Cir. 1983). The "fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979). "So simply stating a violation of federal law is not enough." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020). Because, "Section 1983 provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States[,] . . . it is *rights,* not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). And nothing "short of an unambiguously conferred right" can "support a cause of action brought under § 1983." *Id.*

Thus, for plaintiffs to show that a provision of federal law supports a Section 1983 action, "[t]he federal statute in question" must "*unambiguously* give rise to privately enforceable, substantive rights." *Johnson v. Housing Auth.*, 442 F.3d 356,

359 (5th Cir. 2006). For a right to be "unambiguously conferred," the statute must evince an "unmistakable focus on the benefitted class." *Thurman*, 982 F.3d at 956. Courts presume that "Congress did not intend to create a private enforceable right." *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). The "burden is on the plaintiff to show otherwise." *Id.* "[V]ery few statutes are held to confer rights enforceable under § 1983." *Johnson*, 442 F.3d at 360.

## A.     The statutes and regulations govern the administration of experimental treatments, not employment.

The federal statutes and regulations that plaintiffs cite relate to administration of experimental treatments and research on human subjects; none relates to employment. Thus, even if any of these provisions conferred private rights (which they do not), they would not be rights pertinent to plaintiffs' claims, which center on Houston Methodist's COVID-19 employment policy.

As in similar cases brought by plaintiffs' counsel around the country, "Plaintiffs frequently conflate [the hospital's] obligations as an entity that administers vaccines with [the hospital's] actions as an employer." *Curtis v. PeaceHealth*, 2024 WL 248719, at *5 (W.D. Wash. Jan. 23, 2024); *see also, e.g.*, *Brock v. City of Bellingham*, 2025 WL 254725, at *7 (W.D. Wash. Jan. 21, 2025). The vast majority of plaintiffs here never even got vaccinated. And not one got vaccinated by Houston Methodist. As the district court correctly explained, "Plaintiffs do not

allege that any defendant directly administered the vaccine to them, so their claims against Defendants fall outside of the reach of the informed-consent provisions." ROA.1797.

The statutes and regulations that plaintiffs continue to flog in their opening brief are:

- 21 U.S.C. §360bbb-3 (Section 360);

- The Public Readiness and Emergency Preparedness Act, 42 U.S.C. §247d-6d (PREP Act);

- 10 U.S.C. §980 (Section 980);

- 45 C.F.R. §46.116 (Section 46.116); and

- The CDC COVID-19 Vaccination Program (CDC Program).

On their face, none of these applies at all to the conduct plaintiffs complain of—Houston Methodist's decision to require COVID-19 vaccination as a condition of employment.

### *Section 360*

Section 360 is entitled "Authorization for Medical Products for Use in Emergencies." It allows for the use of medical products that have not yet been approved by the FDA under certain conditions. 21 U.S.C. §360bbb-3(a), (e). It obligates the Secretary of Health and Human Services to establish conditions for the administration of the product by a health care provider—"a person who carries out

any activity for which the authorization is used." *Id.* §360bbb-3(e)(1)(A). For example, it directs the Secretary to ensure that providers inform individuals receiving the product about its risks and benefits and of the option to accept or refuse the product. *Id.* §360bbb-3(e).

Section 360 thus does not regulate employment. Rather, it "addresses the interaction between the medical provider and the person receiving the vaccine, not the interaction between an employer and an employee receiving a vaccine." *Norris v. Stanley*, 73 F.4th 431, 438 (6th Cir. 2023).[3] And the statute does not even address the provider directly—it "obligates only the Secretary of Health and Human Services to act, by establishing 'conditions designed to ensure' informed consent." *Children's Health Def., Inc. v. Rutgers*, 93 F.4th 66, 76 (3d Cir. 2024) (holding that, because Section 360 does not impose obligations on state universities, it could not conflict with university's vaccination policy); *see also Norris*, 73 F.4th at 438 ("The statute is meant to ensure patients' consent to the pharmaceutical they are receiving, but this does not mean that [a university] cannot require vaccination as a term of employment.").

---

[3] *See also, e.g.*, *Ciraci v. J.M. Smucker Co.*, 2021 WL 6064748, at *2 n.1 (N.D. Ohio Dec. 22, 2021); *McCutcheon v. Enlivant ES, LLC*, 2021 WL 5234787, at *3 (S.D.W. Va. Nov. 9, 2021); *Rhoades v. Savannah River Nuclear Sols., LLC*, 2021 WL 5761761, at *17 (D.S.C. Dec. 3, 2021).

Additionally, the district court's correct conclusion that "Plaintiffs' allegations fall outside of [Section 360's] scope," ROA.1796-97, did not constitute "improper fact-finding," Op. Br. 54. It was a *legal* conclusion, based on the statutory text and case law applying it, such as *Norris*. *See* ROA.1796-97. The district court was not required to accept plaintiffs' legal theories. *See Arnold*, 979 F.3d at 266.

### *PREP Act*

The PREP Act is a liability shield for "covered persons, such as pharmacies and drug manufacturers, from suits and liability during a public-health emergency." *Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237, 243 (5th Cir. 2022) (internal quotation marks omitted). As this Court recognized in *Manyweather*, it "extends only to 'the administration . . . or the use'" of vaccines and other treatments during the public health emergency. *Id.* (alteration in original) (quoting 42 U.S.C. §247d-6d(a)(1)). The PREP Act has no application to terms or conditions of employment.

### *Section 980*

Section 980 regulates use of Department of Defense funds "for research involving a human being as an experimental subject." 10 U.S.C. §980(a). It says nothing about employment policies, even those of an entity receiving Defense Department funds. *Id.*

Additionally, the district court did not "resolve disputed factual matters," Op. Br. 55, in holding that Section 980 could not apply as a matter of law. Plaintiffs contend that they "alleged that the mandated drugs were procured" with Defense Department funding," *id.*, but they do not allege that Houston Methodist used Defense funds "to experiment on them without their informed consent." ROA.1799. Plaintiffs do not allege that Houston Methodist administered the vaccine to any of them.

### *Section 46.116*

Section 46.116 is a federal regulation issued by the Department of Health and Human Services stating general requirements for informed consent of human research subjects. 45 C.F.R. §46.116. The regulation defines informed consent for purposes of regulating "all research involving human subjects conducted, supported, or otherwise subject to regulation by any Federal department or agency." 45 C.F.R. §46.101 (titled "To what does this policy apply?"). It does not regulate employment but, rather, the manner in which research on human subjects is to be conducted. *See id.*

### *CDC Program*

Plaintiffs also point to the CDC Program, the policies of the CDC issued in connection with the emergency authorization of the COVID-19 vaccine. They

attached a copy of these policies, including an agreement that those who administered the vaccine had to sign in order to gain access to the shots. On their face, these policies govern the administration of the vaccine and say nothing about employment practices. *See* ROA.972 ("Organization must *administer* COVID-19 Vaccine in accordance with all requirements and recommendations of CDC and CDC's Advisory Committee on Immunization Practices." (emphasis added)).

***

In short, none of the statutes and regulations plaintiffs cite governs the employment relationship. They concern administering treatments to individuals and research on human subjects. Mostly, they do not even directly govern Houston Methodist's use of the vaccine.

Complying with Houston Methodist's employment policy did not even require that plaintiffs be vaccinated *by* Houston Methodist. ROA.990-92. And *no* plaintiffs allege that they *were* vaccinated by Houston Methodist. ROA.898-913. Plaintiffs' statutes and regulations relating to administering the vaccine are square pegs that do not fit the round hole of their beef with Houston Methodist's employment action.

**B.** **The statutes and regulations are not enforceable by Section 1983.**

Plaintiffs bring all but one of their claims under Section 1983. But none of the cited provisions bestows any enforceable rights.

**1.** **21 U.S.C. §360bbb-3 is not a rights-conferring statute.**

As detailed above (I.A), Section 360 authorizes the use of treatments and medicines that have not received FDA approval in emergencies. It directs the HHS Secretary to ensure that doctors and hospitals administering these emergency treatments do so with the informed consent of patients. It imposes no obligations on private individuals, only the Secretary, who is directed to set "conditions designed to ensure" that providers obtain patients' informed consent. 21 U.S.C. §360bbb-3(e)(1)(A); *see also Rutgers*, 93 F.4th at 76. Thus, plaintiffs cannot "root a Section 1983 action in the informed-consent provisions in the first place." ROA.1797.

By its terms, Section 360 does not bestow rights but rather regulates the conduct of the Secretary. Far from granting a right to plaintiffs, the language they rely upon directs the Secretary to establish conditions for providers to administer emergency medicines to patients. The statute thus places plaintiffs two steps away from the individual whose conduct is regulated (the Secretary). Nowhere near being Section 360's "unmistakable focus," *Thurman*, 982 F.3d at 956, plaintiffs are, at most, only indirect beneficiaries of a directive to the Secretary to place conditions on the use of emergency medicines by providers. And "it is *rights*, not the broader or

vaguer 'benefits' or 'interests,' that may be enforced" under Section 1983. *Gonzaga*, 536 U.S. at 274.

As this Court and sister circuits have already ruled, Section 360 is not one of the "very few statutes," *Johnson*, 442 F.3d at 360, that confer a right enforceable under Section 1983: "References to voluntariness in . . . the Emergency Use Authorization provision, 21 U.S.C. § 360bbb-3, do not vest employees with a right against private employers." *Hughes v. Terminix Pest Control, Inc.*, 2024 WL 3440465, at *1 (5th Cir. July 17, 2024) (unpublished); *see also Johnson v. Kotek*, 2024 WL 747022, at *2 (9th Cir. Feb. 23, 2024) (unpublished) (Section 360 did not create a private federal damages remedy enforceable under Section 1983 for employees suing over COVID-19 vaccine requirement); *Bird v. Martinez-Ellis*, 2022 WL 17973581, at *5 (10th Cir. Dec. 28, 2022) (unpublished) (recognizing that Section 360 did not create rights supporting a Section 1983 claim for prison inmates allegedly administered the wrong COVID-19 vaccine). Plaintiffs have not carried their burden to show that Section 360 unambiguously confers rights upon them. *See Sw. Bell*, 529 F.3d at 260.

### 2.    The PREP Act is not a rights-conferring statute.

Far from being a rights conferring statute, the PREP Act is a liability shield for "covered persons, such as pharmacies and drug manufacturers, from suits and

liability during a public-health emergency." *Manyweather*, 40 F.4th at 243 (internal quotation marks omitted). This Court has already held that the Act is not a rights conferring statute. *Hughes*, 2024 WL 3440465, at *1 ("References to voluntariness in the PREP Act . . . do not vest employees with a right against private employers."); *see also Maney v. Brown*, 91 F.4th 1296, 1303 (9th Cir. 2024) (holding that immunity conferred by PREP Act extends to all claims brought under Section 1983*).

Moreover, a statute will not be held to confer rights enforceable via Section 1983 if it has its own comprehensive remedial scheme. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 252-54 (2009). When the "statutes at issue required plaintiffs to comply with particular procedures and/or to exhaust particular administrative remedies prior to filing suit," the statutes did not create rights enforceable under Section 1983. *Id.* at 254.

This Court recognized the PREP Act's administrative process in *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 586 (5th Cir. 2022). "For most who suffer an injury that falls under the immunity provision, the sole remedy is compensation from the 'Covered Countermeasures Process Fund,' as determined by an administrative process." *Id.* Under this process, the Secretary of Health and Human Services determines if a person has been injured by an emergency medication authorized under the PREP Act and sets compensation. *See* 42 U.S.C. §247d-6e(b). This is an

exclusive remedy; no lawsuits are allowed. *Id.* §247d-6e(d)(4). The sole exception is a claim for willful misconduct, which must be brought in the U.S. District Court for the District of Columbia. *Id.* §247d-6e(d)(1)-(e)(1). But even for these willful misconduct claims, a would-be plaintiff must first exhaust the administrative remedies provided by the Secretary. *Id.* §247d-6e(d)(1). "In sum, once the Secretary promulgates a declaration, most injuries caused by a covered person administering a covered countermeasure are subject to the sole remedy of a compensation fund." *Mitchell*, 28 F.4th at 586. "There is a narrow exception for willful-misconduct claims, . . . but only after the claimant has exhausted administrative remedies." *Id.*

Given that comprehensive administrative scheme, plaintiffs do not overcome the presumption that the PREP Act does not confer rights enforceable under Section 1983. *See Fitzgerald*, 555 U.S. at 254. The district court correctly held that "the PREP Act cannot form the basis for Plaintiffs' Section 1983 claims." ROA.1797.

### 3.    10 U.S.C. §980 is not a rights-conferring statute.

As detailed above (I.A), Section 980 is directed at the Department of Defense, barring funds appropriated to it from being used for research on human subjects without informed consent. It simply states, "Funds appropriated to the Department of Defense may not be used for research involving a human being as an experimental subject unless . . . the informed consent of the subject is obtained in advance." 10

U.S.C. §980(a). As the district court correctly recognized, ROA.1799, this is not rights conferring language that unambiguously confers rights or evinces an "unmistakable focus on" plaintiffs here. *Thurman*, 982 F.3d at 956. On the contrary, it is a statute about how the Department of Defense may use the funds appropriated to it; the accent is on the Department's duties not the rights of the people who must give informed consent. *See Gonzaga*, 536 U.S. at 284 (asking if alleged rights-conferring statute is "phrased in terms of the persons benefitted").

Although it is their burden to show Congress intended Section 980 to confer rights upon them, plaintiffs cite no case law or other authorities to show that Section 980 is anything more than a condition on Department of Defense appropriations. *See Sw. Bell*, 529 F.3d at 260. Because plaintiffs have not carried that burden, the district court correctly dismissed their claim based on Section 980. *See Sweeney v. Univ. of Colo. Hosp. Auth.*, 2024 WL 3713835, at *9 (D. Colo. July 12, 2024) ("Missing from Plaintiffs' argument, however, is any supporting legal authority or meaningful discussion about how [Section 980] contains the sort of clear, rights-creating language contemplated by the Supreme Court . . . .").

### 4.    Regulations never create enforceable rights.

Plaintiffs cannot sue for violations of federal regulations and administrative rules because these are categorically never sources of rights enforceable by Section

1983. *Thurman*, 982 F.3d at 957; *see also* ROA.1801 (district court opinion noting that statutes plaintiffs rely on "do not manifest an unambiguous Congressional intent to confer individual rights; and 45 C.F.R. §46.122, whatever it may say about individual rights, is an administrative regulation, not a statute enacted pursuant to Congress's spending power.").

Plaintiffs argue that federal regulations like Section 46.116 or the policy directives that accompanied emergency approval of the COVID-19 vaccine give them rights enforceable by Section 1983. Not so. "[I]t is Congress, and not an agency of the Executive Branch, that creates federal rights." *Thurman*, 982 F.3d at 957. "Language in a regulation . . . may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).

Because executive branch agencies cannot create rights enforceable by Section 1983, all of plaintiffs' claims based on regulations or administrative actions, including terms and conditions of the CDC's COVID-19 vaccination program, must be dismissed. And this is all the more true to the extent plaintiffs attempt to base their claims on sources that do not even rise to the level of administrative regulations, like the Belmont Report.[4]

---

[4]   *See The Belmont Report*, https://www.hhs.gov/ohrp/regulations-and-policy/belmont-report/index.html (last visited Feb. 26, 2025) (describing and

Moreover, to the extent plaintiffs claim that any other exercise of Congress's power under the Spending Clause is a source of rights they wish to enforce via Section 1983, the district court identified an insurmountable obstacle. *See* ROA.1800. Legislation under the Spending Clause generally does not create rights enforceable under Section 1983. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023). The Supreme Court recently explained that for "Spending Clause legislation . . . 'the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State.'" *Id.* (quoting *Gonzaga*, 536 U.S. at 280).

**C.    21 U.S.C. §360bbb-3 provides no private right of action.**

Of the miscellaneous statutes they cite, plaintiffs contend that only one, Section 360, gives rise to an implied cause of action independent of Section 1983. The district court correctly rebuffed this argument. Section 360 cannot be enforced by private lawsuits.

Section 360 is part of the Food, Drug, and Cosmetic Act (FDCA), *see, e.g.*, *Bird*, 2022 WL 17973581, at *4-5, under which "Private parties may not bring

---

linking to the report "written by the National Commission for the Protection of Human Subjects of Biomedical and Behavioral Research").

enforcement suits." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014). This is because of the governing statutory text. Federal statutes do not "automatically give rise to a private cause of action" *Cannon*, 441 U.S. at 688. In the case of Section 360, all proceedings for violation of its chapter of the United States Code are expressly reserved to the United States. *See* 21 U.S.C. §337(a) ("[A]ll . . . proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."). Section 337 "leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001).

Federal district courts presented with this same issue agree that Section 360 gives litigants like plaintiffs here no cause of action over COVID-19-related measures. *Kiss v. Best Buy Stores*, 2022 WL 17480936, at *8 (D. Or. Dec. 6, 2022) (collecting cases). That includes the district court in the first case that Bridges and 71 other plaintiffs here brought against Houston Methodist, whose judgment this Court affirmed. *Bridges v. Houston Methodist Hosp.*, 543 F.Supp.3d 525, 527 (S.D. Tex. 2021), *aff'd*, 2022 WL 2116213 (5th Cir. June 13, 2022).

\*\*\*

Even if plaintiffs could overcome other independently sufficient obstacles to suit—like inability to show state action—they have no cognizable claims under federal statutes. No statute they cite actually applies to their claims. And none provides them a cause of action. The district court correctly dismissed plaintiffs' federal claims on this basis.

Notably, the district court's conclusion that Houston Methodist, as plaintiffs put it, "owed no constitutional, statutory, or programmatic duties to Plaintiffs under the CDC Program," Op. Br. 52, was a (correct) *legal* conclusion. It was not, as plaintiffs assert, a failure "to accept Plaintiffs' *factual* allegations as true." *Id.* (emphasis added). Neither the district court nor this Court is required to accept plaintiffs' *legal* contentions about whether duties are owed as true in deciding a Rule 12(b)(6) motion. *E.g.*, *Arnold*, 979 F.3d at 266.

## II. Plaintiffs' Claims Are Not Directed at State Action.

Even if any of the statutes and regulations plaintiffs invoke could support a Section 1983 action against anyone, plaintiffs would still have no Section 1983 claims against Houston Methodist—a private hospital being sued for private conduct. "To state a claim under § 1983, a plaintiff must" not only "allege the violation of a right secured by the Constitution and laws of the United States," but must also "show

that the alleged deprivation was *committed by a person acting under color of state law.*" *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added).

"The distinction between private conduct and state action turns on substance, not labels." *Lindke v. Freed*, 601 U.S. 187, 197 (2024). The district court correctly concluded that an independently sufficient reason that plaintiffs' Section 1983 claims fail is "because Plaintiffs 'have failed to allege any manner in which the termination of their employment may have constituted state action.'" ROA.1793 n.4 (cleaned up) (quoting *Pearson v. Shriners Hosps. for Children*, 736 F.Supp.3d 521, 527 (S.D. Tex. 2024)).

### A. Houston Methodist did not act under color of state law.

"[P]rivate conduct, no matter how discriminatory or wrongful, is excluded from § 1983's reach." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (internal quotation mark omitted). "To determine whether a private actor, like Houston Methodist, acted 'under color of state law,' the 'critical inquiry' is 'whether the alleged infringement of federal rights can be fairly attributable to the State.'" *Julapalli v. Boom*, No. 24-20276, 2025 WL 314123, at *2 (5th Cir. Jan. 28, 2025) (unpublished) (quoting *Cornish*). As a panel of this Court recently held, "Houston Methodist's enforcement of its vaccination policy was private conduct that is not 'fairly attributable to the State.'" *Id.* at *3.

"Deciding whether a deprivation of a protected right is fairly attributable to the State 'begins by identifying the specific conduct of which the plaintiff complains'." *Cornish*, 402 F.3d at 550 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)). The specific conduct of which plaintiffs here complain is "Houston Methodist's enforcement of its vaccination policy." *Julapalli*, 2025 WL 314123, at *2.

Again conflating Houston Methodist's role as their employer with its role as a provider of the vaccine to the general public, plaintiffs contend that "state action" can be discerned from Houston Methodist's interactions with government as a vaccine provider. As discussed below, this is wrong. But it is also irrelevant.

"Faithful adherence to the 'state action' requirement of the Fourteenth Amendment requires careful attention to the gravamen of the plaintiff's complaint." *Blum v. Yaretsky*, 457 U.S. 991, 1003 (1982). The gravamen here is that Houston Methodist's conduct in adopting and implementing the policy requiring employees to be vaccinated was allegedly unduly coercive. *See Cornish*, 402 F.3d at 550 (when private corporation that ran correctional facility was sued by terminated employee, "at issue [was] whether [corporation's] *decisions as an employer* are fairly attributable to the State"); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 844 (1982) (White, J., concurring) (asking whether "the *employment decision* was *itself* based upon some rule

of conduct or policy put forth by the State" (emphasis added)). Plaintiffs' claims have nothing to do with Houston Methodist *administering* the vaccine—most plaintiffs never got the vaccine, and none got it from Houston Methodist.

*Cornish* is directly on point. The plaintiff there had worked for a privately operated juvenile correctional facility. 402 F.3d at 547. He sued his private-corporation employer under Section 1983, claiming that it violated his constitutional rights when it fired him. *Id.* Even though the corporation acted under color of state law in performing the traditionally governmental function of "providing juvenile correctional services to Dallas County," this Court insisted on differentiating the corporation's role in performing that state function from its role as employer. *Id.* at 550. The Court focused on "the specific conduct" underlying the plaintiff's claim. *Id.* The Court affirmed dismissal for failure to state a claim, noting that the plaintiff "allege[d] no facts concerning why [the corporation's] role *as an employer* constituted state action." *Id.*

If the employment choices of a private corporation operating a county juvenile facility are not state action, then *a fortiori*, the employment decisions of a private hospital are not state action either. In contrast with operating a correctional facility, running a hospital or vaccinating people is not even a traditionally exclusive state function. *See, e.g.*, *Blum*, 457 U.S. at 1010-12 (nursing homes do not "perform a

function that has been 'traditionally the exclusive prerogative of the State'"); *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989) (private hospital's revoking a physician's staff privileges was not "a traditional state function"); *Spencer v. Lee*, 864 F.2d 1376, 1379 (7th Cir. 1989) (en banc) (treatment of "the sick and infirm generally" is not traditionally "the *exclusive* prerogative of government").

In short, plaintiffs do not plausibly allege any relevant state action. The "specific conduct" underlying the "gravamen" of their complaint is Houston Methodist's decision as a private employer to require its employees to get the COVID-19 vaccine (from *any* provider). Plaintiffs' core allegation that Houston Methodist's policy unduly burdened their choice of whether to get vaccinated makes no sense outside the context of plaintiffs' connection to Houston Methodist as its employees.

Houston Methodist's conduct in providing the vaccine—even if *that* conduct amounted to state action because of its relationship to government vaccination programs—forms no basis for plaintiffs' Section 1983 claims, especially given that none of these plaintiffs got the vaccine from Houston Methodist (if at all). And, as discussed next, Houston Methodist's conduct as a provider also was not state action in any event.

## B.   Simply participating in a government program did not make Houston Methodist a state actor.

Contrary to plaintiffs' assertions, compliance with statutes and regulations, including the conditions the federal government imposed on those administering COVID-19 vaccines, does not make Houston Methodist's conduct as a vaccine provider state action. "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. Nor does the fact that the regulation is extensive and detailed . . . do so." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974) (footnote and citation omitted); *see also Blum*, 457 U.S. at 1004, 1010-11. In particular, "a private hospital is not transformed into a state actor merely by statutory regulation." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999).

Thus, plaintiffs' contentions about "the regulatory structure under the CDC Program" and that "Houston Methodist operated under multiple federal and state obligations," Op. Br. 47-49, do not establish that Houston Methodist was a state actor for any purpose.

The same is true of plaintiffs' allegation that Houston Methodist received financial benefits by participating in the CDC Program to distribute the vaccine and administer it to patients. *See* Op. Br. 48-49. The Supreme Court has made clear that receiving benefits from a government program does not make one a state actor. *See*

*Rendell-Baker*, 457 U.S. at 840 (holding that "receipt of public funds" did not make the defendant's "decisions acts of the State"); *see also Blum*, 457 U.S. at 1011 ("That programs undertaken by the State result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the State is responsible for decisions made by the entity in the course of its business.").

Were the law otherwise, then everyone doing business in a sector heavily regulated or funded by the government (such as defense contracting or highway construction) would be a state actor. This cannot be and is not the law, because the source of funding is irrelevant to the nature of the activity. *See Blum*, 457 U.S. at 1011-12 (extensive government regulation and funding of "privately owned enterprises providing services that the State would not necessarily provide" does not make the business decisions of such enterprises "state action," and "decisions made in the day-to-day administration of a nursing home," including "decisions to discharge or transfer Medicaid patients" were not state action).

\*\*\*

Once again, plaintiffs confuse *legal* arguments they make with "factual allegations." Op. Br. 52. They mischaracterize the district court's dismissal as resting on the "premise[] . . . that an entity acting on behalf of the federal government

could lawfully coerce individuals to receive federally funded emergency use drugs and penalize their refusal," contrary to "Plaintiffs' factual allegations." *Id.* But the district court correctly held, as legal matters, that Houston Methodist was not "acting on behalf of" government, and, in any event, plaintiffs' own pleadings allege that none of them "receive[d]" the COVID-19 vaccine from Houston Methodist. The district court was not required to take as true plaintiffs' *legal* contentions that Houston Methodist was a state actor coercing them "to receive . . . emergency use drugs." *Id.*; *see Arnold*, 979 F.3d at 266.

### C.    If Houston Methodist were considered a state actor, claims against it would be barred under qualified immunity.

Even if the specific conduct at issue in plaintiffs' complaint constituted state action and Houston Methodist thus were subject to suit under Section 1983, Houston Methodist would enjoy qualified immunity.

To the extent that private persons do act under color state law, they are just as entitled to qualified immunity as government employees. *See Filarsky v. Delia*, 566 U.S. 377, 393-94 (2012) (private attorney retained by city to conduct official investigation had qualified immunity). Qualified immunity shields those whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To overcome qualified immunity, a plaintiff must show that "the right

at issue was 'clearly established' at the time of [the] alleged misconduct." *Id.* at 232; *Ramirez v. Escajeda*, 44 F.4th 287, 291 (5th Cir. 2022) (emphasizing that the plaintiff bears the burden to defeat the defense once raised).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Supreme Court instructs courts "not to define clearly established law at a high level of generality." *Id.* at 742. "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 577 U.S. at 12 (internal quotation marks omitted). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (internal quotation marks omitted). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).

Were the federal laws cited by plaintiffs somehow applicable to Houston Methodist's conduct, were Houston Methodist somehow a state actor, and were plaintiffs' claims not mostly barred by res judicata, then Houston Methodist would still have qualified immunity. Nothing in the laws cited by plaintiffs applies on its

face to a hospital's employment decisions. No court has found a hospital like Houston Methodist liable for terminating an employee for failure to receive a vaccine on the basis of any of the laws upon which plaintiffs rely. Plaintiffs certainly cite no cases so holding.

If anything, courts, including this Court, have indicated that Houston Methodist's alleged conduct was lawful. In *Bridges I*, which involved 72 of the plaintiffs here, this Court held that Houston Methodist was within its rights to terminate at-will employees who refused to get the COVID-19 vaccination and also that "[f]ederal law does not" support the employees' claim. 2022 WL 2116213, at *2. And the Court just held, in *Julapalli*, that Houston Methodist's implementation of its internal vaccination policy was not challengeable as unconstitutional under Section 1983 because it was "private conduct." 2025 WL 314123, at *3. Numerous federal courts around the country have likewise rejected claims similar to those brought here. *See, e.g.*, *Rutgers*, 93 F.4th at 71, 88; *Norris*, 73 F.4th at 436-37; *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293-94 (2d Cir. 2021).

## III.    Plaintiffs Fail to State Claims for Violation of Constitutional Rights.

Apart from relying on miscellaneous statutes and regulations, plaintiffs also attempt to sue Houston Methodist under Section 1983 for violations of the

Fourteenth Amendment's Due Process and Equal Protection Clauses. As an initial matter, as discussed above, Houston Methodist—a private actor that did not engage in any relevant state action—is subject neither to suit under Section 1983 nor to the Fourteenth Amendment. *See Lindke*, 601 U.S. at 194-95 ("This limit [i.e., Section 1983's state-action requirement] tracks that of the Fourteenth Amendment, which obligates *States* to honor the constitutional rights that § 1983 protects."). Thus, these claims fail at the outset.

But even if the Fourteenth Amendment did apply to Houston Methodist, its actions did not deprive plaintiffs of any constitutionally protected interests. Plaintiffs have no constitutionally protected right to at-will employment or to refuse vaccination for contagious disease, and there was no equal protection violation.

### A.    Plaintiffs fail to state due process claims.

Plaintiffs pleaded that they were deprived "of their substantive and procedural due process rights." ROA.1007-08. Neither their complaint nor their opening brief states a coherent theory of how either substantive or procedural due process rights were allegedly violated. But, in any event, both types of claims necessarily fail because, as a matter of law, plaintiffs cannot establish their essential elements.

"To state a Fourteenth Amendment due process claim under § 1983, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels,* 250 F.3d 943, 946 (5th Cir. 2001)); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."); *Conroe Creosoting Co. v. Montgomery Cnty., Tex.*, 249 F.3d 337, 341 (5th Cir. 2001) (specifying that a substantive due process claim requires establishing existence of a protected interest).

As already discussed, plaintiffs cannot show that Houston Methodist engaged in governmental action. Nor can they show the essential element of a protected life, liberty, or property interest.

### 1.    Plaintiffs have no protected interest in at-will employment.

Plaintiffs label their allegedly protected interest as a "right to refuse" or "right to give informed consent." *E.g.*, Op. Br. 40, 59. But the rights they assert are to continued employment.[5]  Houston Methodist did not administer the vaccine to

---

[5] As to the four plaintiffs who were contractors, not employees, they, of course, could not assert a right to continued employment even if one existed. And plaintiffs' brief makes no argument regarding a right to require Houston Methodist to continue

any plaintiff at all, much less over anyone's refusal or with only uninformed consent. Those few plaintiffs who got the vaccine did so from someone other than Houston Methodist.

These facts also show the fallacy in plaintiffs' attempt to discredit the reasoning of the district court in *Pearson v. Shriners Hospitals*. *See* Op. Br. 42-43. Neither *Pearson* nor the district court here held that "Plaintiffs would have to be injected with the drugs in order to have the right to refuse being injected with the drugs." *Id.* at 42. Rather, if plaintiffs had a right to refuse being injected, they successfully *exercised* that right by not getting injected. Plaintiffs would have to be injected in order to have claims that they were *deprived* of any right to refuse being injected.

Plaintiffs contend it was unlawful to terminate their employment for refusing the vaccine. But plaintiffs had no constitutionally protected, unconditional right to remain employed. Whether a protected interest exists is "informed by the substantive parameters of the relevant state law." *Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003). "In Texas, there exists a presumption that employment is at-will . . . ." *Id.* An employee has no constitutionally protected property or liberty

---

contracting with them. *Cf. Gentilello*, 627 F.3d at 544-45 (although tenured medical professor had protected interest in continued employment, he had none in specific chair positions when no contract or other source entitled him to them).

interest in at-will employment. *See id.* at 398-99 (holding that demoted police officers had no protected interest because their employment was terminable at will).

There is no dispute that plaintiffs were at-will employees of Houston Methodist. *See* Op. Br. at 64 ("Texas allowed the at-will employment doctrine to remain in effect, enabling its delegated actors to use this state law to undermine the federally protected right to refuse."). Plaintiffs have not argued that they had any greater right to their continued employment. *Cf. Gentilello*, 627 F.3d at 544-45 (no due process claim for demotion when tenured professor failed to allege any source of entitlement to specific chair positions). Thus, plaintiffs' procedural and substantive due process claims fail for the independently sufficient reason that plaintiffs have no protected interest in their at-will employment.

### 2. There is no fundamental right to refuse vaccination without consequence.

Even accepting plaintiffs' flawed premise that they could bring claims for deprivation of a "right to refuse" against a private defendant who never injected them with the vaccine, any such "right" cannot support a constitutional due process claim. Under Supreme Court precedent, plaintiffs do not possess "a fundamental right ingrained in the American legal tradition" to be free of any and all compulsion to get vaccinated. *Klaassen*, 7 F.4th at 593-94 (state university students may be compelled to get COVID-19 vaccine as a condition of enrollment).

In a public health emergency, a state may constitutionally require *all* citizens to be vaccinated against contagious disease on penalty of a criminal fine. *See Jacobson v. Massachusetts*, 197 U.S. 11, 12-14, 37-39 (1905). *A fortiori* a private employer (even if engaged in state action triggering constitutional protections) can require that its employees get vaccinated if they wish to remain employed.

"*Jacobson* remains good law." *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 465 (5th Cir. 2021). And, as Judge Easterbrook has explained, "Given *Jacobson* . . . , which holds that a state may require all members of the public to be vaccinated against smallpox, there can't be a constitutional problem with vaccination against SARS-CoV-2." *Klaassen*, 7 F.4th at 593; *see also Big Tyme*, 985 F.3d at 465 ("Our court recently articulated that a state's emergency response to public health crises, including pandemics such as COVID-19, is reviewed under the framework originally set forth by the Supreme Court in *Jacobson*.").

Although plaintiffs do not even cite the case in their brief, amici supporting plaintiffs urge the Court to follow *Health Freedom Defense Fund, Inc. v. Carvalho*, 104 F.4th 715 (9th Cir. 2024), *reh'g en banc granted, opinion vacated*, 127 F.4th 750 (Feb. 4, 2025), which held that *Jacobson* did "not directly control based on" the allegations by the plaintiffs in that case, *id.* at 724. *Carvalho* is no longer good law. The Ninth Circuit has now granted rehearing en banc and vacated that opinion. 127 F.4th 750.

Regardless, *Carvalho*'s reasoning is inapposite to this case. Unlike here, the *Carvalho* plaintiffs "allege[d] that the vaccine does not effectively prevent spread" of COVID-19 and sought only prospective declaratory and injunctive relief against future enforcement of a vaccine policy. 104 F.4th at 720, 724. Here, (1) plaintiffs neither pleaded nor argued in their brief that the COVID-19 vaccine does not prevent spread, (2) plaintiffs seek compensatory damages for conduct in 2021, and (3) plaintiffs' complaint expressly acknowledges that Houston Methodist's stated purpose in adopting its 2021 vaccine policy was "to protect our patients, employees, and the community" from "infection/transmission of disease." ROA.990-91 (quoting policy).

"A substantive due process violation is an action government officials may not take no matter what procedural protections accompany them." *SO Apartments, L.L.C. v. City of San Antonio*, 109 F.4th 343, 352 (5th Cir. 2024) (internal quotation marks omitted). *Jacobson* establishes that requiring members of a given community to get vaccinated against a communicable disease like COVID-19 is not such an action. *See* 197 U.S. at 27 ("[A] community has the right to protect itself against an epidemic of disease which threatens the safety of its members."); *see also Klaassen*, 7 F.4th at 593.

Plaintiffs' citations to cases like *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990), and *Washington v. Glucksberg*, 521 U.S. 702 (1997), *see* Op. Br. 27-28, are inapposite. Houston Methodist did not subject plaintiffs to any "unwanted medical treatment." Op. Br. 27. Posing employees with the choice to either get vaccinated or pursue other employment simply does not implicate any deeply rooted "fundamental rights and liberties" that cases like *Glucksberg*, 521 U.S. at 720-22, and *Cruzan*, 497 U.S. at 277-78, say the Due Process Clause protects. *See Klaassen*, 7 F.4th at 593.

## B.     Plaintiffs fail to state an equal protection claim.

Plaintiffs also have no plausible equal protection claim.

"The Equal Protection Clause . . . essentially directs that all persons similarly situated be treated alike." *Stoneburner v. Sec'y of the Army*, 152 F.3d 485, 491 (5th Cir. 1998). "To state an equal protection claim" plaintiffs "must allege, *inter* alia, that similarly situated individuals were treated differently." *Id.* Plaintiffs must also show that "a state actor intentionally discriminated against [them] because of [their] membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the

classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

Even if Houston Methodist were a state actor (which it is not), plaintiffs' claim would still fail at the outset because plaintiffs do not allege the core element of an equal protection claim—differential treatment of *similarly situated* persons. Similarly situated persons are those "who are in all relevant respects alike." *Id.* Plaintiffs argue that they were treated differently from fellow employees who chose to *receive* the vaccine. Op. Br. 62. But those individuals are situated *differently* from plaintiffs, who chose *not* to get the vaccine. As the first step in showing an equal protection violation, plaintiffs would need to allege that other employees who *refused* the vaccine were not terminated.

The relevant respect in which plaintiffs were like other Houston Methodist employees is that they were all Houston Methodist employees. And Houston Methodist treated all its employees the same—it gave them all the same option to get vaccinated and remain employed. Plaintiffs do not allege otherwise.

In any event, because no fundamental right or suspect class is involved, even a classification between similarly situated persons will be upheld if it "is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "[T]he Equal Protection Clause is satisfied so long as there is

a plausible policy reason for the classification." *Nordlinger*, 505 U.S. at 11. The policy will be upheld if, additionally, "the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Id.* (internal citation omitted).

As discussed above, there is no constitutional right, much less a fundamental right, to refuse vaccination against contagious disease. Thus, the Court should sustain Houston Methodist's policy so long as it has a rational basis.

It is undisputed that Houston Methodist's policy rationale was that, as a hospital, it should require vaccination of its employees to protect the health of its patients, employees, and the community. *See* ROA.990-91. The challenged policy certainly had a rational basis. *See Bridges I*, 543 F.Supp.3d at 528 ("Methodist is trying to do their business of saving lives without giving them the COVID-19 virus. It is a choice made to keep staff, patients, and their families safer."); *see also Biden v. Missouri*, 595 U.S. 87, 95 (2022) ("Vaccination requirements are a common feature of the provision of healthcare in America: Healthcare workers around the country are ordinarily required to be vaccinated for diseases such as hepatitis B, influenza, and measles, mumps, and rubella.").

**IV.    Plaintiffs May Not Keep Relitigating Their Claims Piecemeal.**

Even if any of plaintiffs' claims had any merit, res judicata and the related rule against claim splitting would bar most of the plaintiffs from proceeding in this forum. Those related doctrines prevent a plaintiff from vexatiously relitigating claims arising from the same nucleus of facts in multiple proceedings, either seriatim or simultaneously. As to a majority of plaintiffs in *Bridges II* (this case), these rules present additional grounds to affirm the district court's Rule 12(b)(6) dismissal.

Of the 112 *Bridges II* plaintiffs, 72 of them were also plaintiffs in the prior *Bridges I* litigation, meaning claim preclusion bars their *Bridges II* suits. And 19 plaintiffs here, most of whom were also *Bridges I* plaintiffs, are simultaneously pursuing related claims in another proceeding, which violates the prohibition against claim splitting. Plaintiffs' brief does not address these independent and alternative grounds for affirmance.

**A.    Res judicata bars claims by the 72 *Bridges I* plaintiffs.**

Whether the *Bridges I* judgment bars the *Bridges I* plaintiffs' claims here is a question of law. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 (5th Cir. 2016). "[T]rue *res judicata* or claim preclusion . . . bars the litigation of claims that have been or should have been raised in an earlier suit." *Id.* Claim preclusion applies when four elements are met:

> (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.

*Id.* (quoting *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)). Whether the "suits involve the same cause of action" is determined by "a transactional test"—"whether they are based on the 'same nucleus of operative facts.'" *Id.* (quoting *N.Y. Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000)).

### 1.    Parties identical or in privity

The 72 *Bridges I* plaintiffs are common to both cases.[6] The defendants in *Bridges I* were Houston Methodist entities that were identical to or in privity with

---

[6] The 72 *Bridges II* plaintiffs who were also *Bridges I* plaintiffs are Rosemarie Aldaya, Sandra Altamirano, Judith Andriko, Mary Apacway, Dajuana Armstrong, Edna Barrera, Debra Baugh, Latricia Blank, James Borje, Laura Bowden, Jennifer Bridges, John Brockus, Katherine Brol, Brian Clegg, Sherry Colbert, Joann Crump-Creamer, Zoretta Curry, Julie De Torre, Sierra Dockray, Stephanie Dunlap, Celina Elvir, Brian Felgere, Rebeka Fontenot, Michelle Fuentes, Ashton Hanley, Tara Hansen, Stacey Hanzelka, Staria Haugenater, Philip Herin, Shauna Herin, Jade Hernandez, Luis Hernandez, Sharon Hollier, Walter Infantes, Dana Janoch, Jason Jimenez, John Lasseigne, Ashlee Leon-Lewis, Bennie Lopez, James McCann, Rogelio Mendez, Jr., Kimberly Mikeska, Norma Miller, Yolunda Milton, Ahmed Montgomery, Robert Morin, Bob Nevens, Linda Pickard, McKenli Pinkney, Jonae Powell, Averi Reed, Kimberly Rensi, Peejaye Robins (upon information and belief is also Pamela Robins), Betty Samuel, Giovani Savans, Leevetra Seals, Maria Serrano, Kara Shepherd, Nicole Smith, Freenia Stewart, Karene Tanner, Maria Trevino, Terah Trevino, Charles Varghese, Brandi Vincent, Mathea Volesky, Jennifer Warren, Alexandra Williams, Karen Witt, Latasha Woods, Katie Yarber, and Ricardo Zelante. *Compare* ROA.898-913 (*Bridges II* plaintiffs), *with* ROA.552-63 (*Bridges I* plaintiffs).

the entity and individual Houston Methodist defendants in this case. *Compare* ROA.913-14 (*Bridges II* defendants), *with* ROA.563 (*Bridges I* defendants).

### 2.    Judgment by court of competent jurisdiction

The *Bridges I* dismissal was issued by a federal district court in the Southern District of Texas and affirmed by this Court. *Bridges v. Methodist Hosp.*, No. 21-20311, 2022 WL 2116213, at *1, *3 (5th Cir. June 13, 2022) (*Bridges I*).

### 3.    Judgment on the merits

The *Bridges I* Rule 12(b)(6) dismissal with prejudice was a final judgment on the merits for res judicata purposes. *E.g.*, *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 399 & n. 3 (1981). And it was affirmed by a final judgment of this Court. *Bridges I*, 2022 WL 2116213, at *3.

### 4.    Same nucleus of operative facts

The operative facts in *Bridges I* were indistinguishable from those in the present case: "Houston Methodist (HM) hospitals imposed a mandatory COVID-19 vaccination policy on its employees. Plaintiffs, former employees of HM, allege that they were fired or were going to be fired for refusing to receive the COVID-19 vaccine, as required by the policy." *Id.* at *1.

It is not necessary that the same theories of liability and recovery be raised in the two suits. *E.g.*, *Gillispie*, 203 F.3d at 387. The point is that any theories plaintiffs

raise in *Bridges II* could also have been raised in *Bridges I* on "*the same key facts.*" *Id.*[7] In *Bridges II*, plaintiffs—at most—present different (yet equally unavailing) theories for why Houston Methodist's COVID-19 vaccination policy violated the law. These plaintiffs cannot bite the same apple twice. *See id.*

### B.    Plaintiffs cannot split their claims among multiple suits.

While res judicata prohibits relitigating claims that were or could have been raised in a prior suit, the related prohibition against claim splitting bars multiple suits from proceeding simultaneously in the first instance. "Claim splitting occurs when a plaintiff splits 'a single cause of action or claim' by 'advancing one part in an initial suit and attempting to reserve another part for a later suit.'" *Bank of N.Y. Mellon v. Riley*, 2022 WL 1773364, at *3 (5th Cir. June 1, 2022) (unpublished) (quoting *Tex. Emps. Ins. Ass'n v. Jackson*, 862 F.2d 491, 501 (5th Cir. 1988) (en banc)). "A main purpose behind the rule preventing claim splitting is to protect the defendant from being harassed by repetitive actions based on the same claim." *Matter of Super Van Inc.*, 92 F.3d 366, 371 (5th Cir. 1996).

---

[7] Notably, however, the *Bridges I* complaint did raise legal theories similar to, if not identical with, theories raised here. *See Bridges I*, 2022 WL 2116213, at *1 (complaint set forth claim for "violations of federal law and regulations, including 21 U.S.C. § 360bbb-3, 41 C.F.R. 46.101, 46.102, and 46.116, for failure to advise plaintiffs of the risks and benefits of the vaccine and to provide an option to accept or refuse the vaccine").

A plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants." *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985) (cleaned up). "When a plaintiff files a second complaint alleging the same cause of action as a prior, *pending,* related action, the second complaint may be dismissed." *Id.*

In December 2022, 21 individuals—all represented by *Bridges I* plaintiffs' counsel—filed religious discrimination lawsuits in the Southern District of Texas against Houston Methodist based on its vaccination employment policy. ROA.726-813 (discrimination lawsuits complaints). Nineteen of those individuals are also plaintiffs in this case.[8] (Thirteen of these were also *Bridges I* plaintiffs.) In March 2023, these suits were consolidated into a single action. ROA.815-16.

The operative facts in those lawsuits are indistinguishable from those in this case. *See generally* ROA.726-813. The previously filed, still-pending consolidated discrimination action is the proper forum for these 19 plaintiffs to pursue their causes

---

[8] The 19 affected plaintiffs are Rosemarie Aldaya, Judith Andriko, Dajuana Armstrong, Tameka Clark, Sherry Colbert, DeAnna Conway, Zoretta Curry, Stephanie Dunlap, Gerardo Garza, Jade Hernandez, Becky Melcer, Yolunda Milton, McKenli Pinkney, Averi Reed, Peejaye Robins (upon information and belief is also Pamela Robins), Mandy Sisto, Paige Thomas, Brandi Vincent (upon information and belief is also Randi Vincent), and Ricardo Zelante. *Compare* ROA.898-913 (*Bridges II* plaintiffs), *with* ROA.815 (listing plaintiffs in consolidated discrimination litigation).

of action (to the extent not already precluded by *Bridges I*). *See Oliney*, 771 F.2d at 859. The district court correctly dismissed the duplicative claims here. *See id.*

## V.     The District Court Correctly Dismissed with Prejudice.

Finally, the district court was correct to dismiss plaintiffs' federal claims with prejudice. Plaintiffs never requested leave to amend their complaint and, regardless, could not plead valid claims as a matter of law. In short, amendment was waived and, in any event, would be futile.

"[I]n order to take advantage of the liberal amendment rules as outlined in the Federal Rules of Civil Procedure," a party must at least *request* leave to amend and "set forth with particularity the grounds for the amendment and the relief sought." *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330-31 (5th Cir. 2003); *see also Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 877-78 (5th Cir. 2021).

Plaintiffs here never asked the district court for leave to amend to avoid Rule 12(b)(6) dismissal, including either in a formal motion under Rule 15(a) or in their opposition to Houston Methodist's Rule 12(b)(6) motion. *See generally* ROA.1031-80 (plaintiffs' motion response containing no request to amend). This Court "will not consider assertions that were not raised in the district court." *Aldridge*, 990 F.3d at 878.

Even in this Court, plaintiffs' one-paragraph argument does not specify any grounds for amending. *See* Op. Br. 65-66. Thus, even if it could be considered, it would be insufficient. *See Doe*, 343 F.3d at 330-31; *cf. Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329-30 (5th Cir. 2002) ("[E]ven had plaintiffs moved for and been denied leave to amend, they would have waived any error on this basis by failing to raise the issue in their brief on appeal.").

And had plaintiffs requested leave, the district court would not have abused its discretion in denying it because "granting leave to amend would have been futile." *Aldridge*, 990 F.3d at 878. Plaintiffs' own authority recognizes that courts may deny leave to amend when "it is clear that the defects are incurable." *Great Plains*, 313 F.3d at 329.

For the many independently sufficient reasons discussed above, plaintiffs' federal claims fail as a matter of law. Below and in this Court, plaintiffs have already had ample "opportunity to refine their claims and clarify their legal arguments." Op. Br. 66. Indeed, as the district court noted in its dismissal order, plaintiffs had already "amend[ed] their pleading multiple times." ROA.1793. Repleading yet again could not fix these legally defective claims.

"At some point a court must decide that a plaintiff has had a fair opportunity to make his case; if, after that time, a cause of action has not been established, the

court should finally dismiss the suit." *Gentilello*, 627 F.3d at 546 (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)). Houston Methodist is entitled to the finality provided by dismissal with prejudice, which the district court correctly granted. *See id.* at 545-46.

## Conclusion

For these reasons, the Court should affirm the judgment. Houston Methodist also requests all other relief to which it is entitled.

Dated:  February 26, 2025                     Respectfully submitted,

                                              */s/ Constance H. Pfeiffer*
                                              ─────────────────────────
                                              Constance H. Pfeiffer
                                              Christian J. Ward
                                              Andrew T. Ingram
                                              **YETTER COLEMAN LLP**
                                              811 Main Street, Suite 4100
                                              Houston, Texas 77002
                                              (713) 632-8000

                                              Attorneys for Appellees
                                              Methodist Hospital, doing business as
                                              Methodist Hospital System; Houston
                                              Methodist The Woodlands Hospital;
                                              Methodist Health Centers, doing business
                                              as Houston Methodist Baytown Hospital,
                                              doing business as Houston Methodist Sugar
                                              Land Hospital, doing business as Houston
                                              Methodist The Woodlands Hospital,
                                              Houston Methodist Willowbrook Hospital;
                                              Marc L. Boom; and Robert A. Phillips

## CERTIFICATE OF SERVICE

I certify that this document was filed with the Court via the court's electronic filing system, on the 26th day of February, 2025, and an electronic copy of the response was served on all counsel of record, as listed below, via the court's electronic filing system on the same date:

David Joseph Schexnaydre
Schexnaydre Law Firm, LLC
2895 Hwy 190, Suite 212
Mandeville, Louisiana 70471
david@schexnaydre.com

*Counsel for Appellants*
*Jennifer Bridges, Breann Emshoff,*
*Amanda Lofton, Brett Cook, and*
*Stefanie Martinez*

David A. Dalia
700 Camp Street
New Orleans, Louisiana 70130
davidadalia@gmail.com

*Counsel for Amici Curiae*
*America's Frontline Doctors and*
*Simone Gold, M.D., J.D.*

Joseph Keeney
Assistant Attorney General
Office of the Attorney General of Texas
P.O. Box 12548
Capitol Station MCO19
Austin, Texas 78711
joseph.keeney@oag.texas.gov

*Counsel for Appellees*
*Cecile Erwin Young and Brian Daniel*

/s/ Constance H. Pfeiffer
Constance H. Pfeiffer

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this document contains 12,231 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Office Word 2016 in 14-Point Equity A font.

Date:   February 26, 2025       */s/ Constance H. Pfeiffer*
                                       Constance H. Pfeiffer