No. 24-20483

# In the United States Court of Appeals for the Fifth Circuit

JENNIFER BRIDGES; BREANN EMSHOFF; AMANDA LOFTON; BRETT COOK; STEFANIE MARTINEZ; ET AL,

*PLAINTIFFS-APPELLANTS*

v.

THE METHODIST HOSPITAL, DOING BUSINESS AS THE METHODIST HOSPITAL SYSTEM; HOUSTON METHODIST THE WOODLANDS HOSPITAL; METHODIST HEALTH CENTERS, DOING BUSINESS AS HOUSTON METHODIST BAYTOWN HOSPITAL; DOING BUSINESS AS HOUSTON METHODIST SUGAR LAND HOSPITAL, DOING BUSINESS AS HOUSTON METHODIST THE WOODLANDS HOSPITAL, DOING BUSINESS AS HOUSTON METHODIST WILLOWBROOK HOSPITAL; MARC L. BOOM; ROBERT A. PHILLIPS; ET AL,

*DEFENDANTS-APPELLEES.*

On Appeal from the United States District Court for the Southern District of Texas, Houston Division, Case No. 4:23-CV-1699

## BRIEF OF APPELLEES

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

KIMBERLY GDULA
Chief, General Litigation Division

JOSEPH KEENEY
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone (512) 463-2120
joseph.keeney@oag.texas.gov
*Counsel for Defendants-Appellees*

## CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of the 5th Cir. R. 28.2.1, Defendant-Appellees Cecile Erwin Young and Bryan Daniel, as governmental parties, are not required to furnish a certificate of interested persons.

*/s/ Joseph Keeney*
Joseph Keeney
Counsel for Defendants-Appellees
Cecile Erwin Young and Bryan Daniel

## STATEMENT REGARDING ORAL ARGUMENT

In accordance with Fifth Circuit Rule 28.2.3 and Federal Rule of Appellate Procedure Rule 34(a)(1), Defendant-Appellees Cecile Erwin Young ("Young") and Bryan Daniel ("Daniel") (collectively, the "State Appellees") respectfully submit that oral argument is not necessary. This appeal involves the application of well-settled principles of state and federal law that have been consistently applied across the United States. The district court applied the law correctly and rendered a concise and straightforward opinion. Oral argument would not aid the decision-making process. However, if the Court determines that oral argument is warranted, the State Appellees respectfully request an opportunity to participate.

TABLE OF CONTENTS

Certificate of Interested Persons ................................................................ ii

Statement Regarding Oral Argument ..................................................... iii

Index of Authorities ............................................................................... vi

Statement of Jurisdiction ......................................................................... 1

Statement of the Issues ............................................................................ 1

Introduction .............................................................................................. 2

Statement of the Case .............................................................................. 3

     A.     Factual Allegations ............................................................ 3

     B.     Procedural History ........................................................... 4

Summary of the Argument ...................................................................... 5

Standard of Review .................................................................................. 7

Argument .................................................................................................. 8

     A.     Appellants waived their claims against Daniel due to
            inadequate briefing ............................................................. 8

     B.     Sovereign immunity bars the claims against Daniel. ......... 10

            1.     The Eleventh Amendment bars their claims against
                  Daniel because Appellants did not allege an ongoing
                  violation of law ......................................................... 11

            2.     Appellants do not seek prospective relief. ............... 12

     C.     Appellants fail to state a claim—neither directly nor
            through Section 1983. ....................................................... 16

            1.     There is no right of action under the federal statutes
                  cited in the operative Amended Complaint. ............... 16

2.     Federal rules or agreements cannot be sources of private rights of action or rights securable under 42 U.S.C. § 1983. .......................................................................... 22

3.     There are no rights in the Belmont Report or Article VII of the ICCPR Treaty enforceable through § 1983. ........................................................................................ 23

D.   Appellants fail to state a Section 1983 claim under the U.S. Constitution. ..................................................................... 24

E.   The district court did not abuse its discretion by not granting Appellants leave to amend. .................................................. 34

Conclusion ............................................................................................. 36

Certificate of Service ............................................................................ 38

Certificate of Compliance ..................................................................... 39

## INDEX OF AUTHORITIES

**Cases**

*Acara v. Banks*,
   470 F.3d 569 (5th Cir. 2006)...........................................................18

*Albright v. Oliver*,
   114 S.Ct. 807 (1994)....................................................................28

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) .....................................................................22

*Ballew v. Cont'l Airlines, Inc.*,
   668 F.3d 777 (5th Cir. 2012) ...........................................................7

*Bauer v. Texas*,
   341 F.3d 352 (5th Cir. 2003) .........................................................15

*Biden v. Missouri*,
   595 U.S. 87 (2022).......................................................................29

*Binh Hoa Le v. Exeter Fin. Corp.*,
   990 F.3d 410 (5th Cir. 2021) ...........................................................8

*Blair v. Deutsche Bank Nat. Tr. Co.*,
   609 F. App'x 767 (5th Cir. 2015) ...................................................36

*Bombardier Aerospace v. Ferrer, Poirot & Wansbrough*,
   354 F.3d 348 (5th Cir. 2003) ...........................................................7

*Boysen v. PeaceHealth*,
   No. 6:23-CV-01229-AA, 2024 WL 3888682 (D. Or. Aug. 19, 2024).......30, 31, 33

*Bridges v. Houston Methodist Hosp.*,
   543 F. Supp. 3d 525 (S.D. Tex. 2021), *aff'd sub nom.*, No. 21-20311,
   2022 WL 2116213 (5th Cir. June 13, 2022)........................................27

*Bridges v. Methodist Hosp.*,
   No. 21-20311, 2022 WL 2116213 (5th Cir. June 13, 2022) ..................19

*Cannon v. Univ. of Chi.*,
441 U.S. 677 (1979) .......................................................................... 17

*Chem. Weapons Working Grp., Inc. (CWWG) v. U.S. Dep't of the Army*,
111 F.3d 1485 (10th Cir. 1997) ........................................................ 21

*Children's Health Def., Inc. v. Rutgers, the State Univ. of N.J.*,
93 F.4th 66 (3d Cir.), *cert. denied sub nom.*, 144 S. Ct. 2688, 219 L.
Ed. 2d 1302 (2024) ...........................................................................32

*City of Houston v. Morris*,
23 S.W.3d 505 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ....................... 15

*Coleman v. Dretke*,
409 F.3d 665 (5th Cir. 2005)..............................................................33

*Collins v. City of Harker Heights, Tex.*,
503 U.S. 115 (1992) ......................................................................... 28

*Curtis v. Inslee*,
709 F. Supp. 3d 1257 (W.D. Wash. 2023) ........................................23

*Darden v. City of Fort Worth*, Texas,
880 F.3d 722 (5th Cir. 2018)............................................................. 17

*Dep't of Tex., Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n*,
760 F.3d 427 (5th Cir. 2014) ............................................................ 17

*Dep't. of Agriculture v. Moreno*,
413 U.S. 528 (1973) ......................................................................... 28

*DeVoss v. Sw. Airlines Co.*,
903 F.3d 487 (5th Cir. 2018) .............................................................. 8

*Dobbs v. Jackson Women's Health Organization*,
597 U.S. 215 (2022) ......................................................................... 28

*Doe 1 v. Michigan Dep't of Corr.*,
No. 13-14356, 2014 WL 2207136 (E.D. Mich. May 28, 2014) .......................... 24

*F.C.C. v. Beach Commc'ns, Inc.*,
  508 U.S. 307 (1993) ........................................................................29

*Feit v. Ward*,
  886 F.2d 848 (7th Cir. 1989) ......................................................... 17

*Flagg v. Stryker Corp.*,
  647 F. App'x 314 (5th Cir. 2016) ..................................................34

*FM Properties Operating Co. v. City of Austin*,
  93 F.3d 167 (5th Cir. 1996)............................................................29

*Freedom From Religion Found. v. Abbott*,
  955 F.3d 417 (5th Cir. 2020) ......................................................... 12

*Freeman v. Cont'l Gin Co.*,
  381 F.2d 459 (5th Cir. 1967)..........................................................34

*Frost v. R.R. Comm'n of State of Cal.*,
  271 U.S. 583 (1926)......................................................................... 9

*George v. Grossmont Cuyamaca Cmty. Coll. Dist. Bd. of Governors,*
  No. 22-cv-0424-BAS-DDL, 2022 WL 16722357 (S.D. Cal. Nov. 4,
  2022) ...............................................................................................26

*Germain v. Howard*,
  556 F.3d 261 (5th Cir. 2009) .........................................................36

*Gonzaga Univ. v. Doe*,
  536 U.S. 273 (2002) .................................................................18, 22

*Gracia v. Brownsville Housing*,
  105 F.3d 1053 (5th Cir. 1997) .......................................................23

*Green v. Mansour*,
  474 U.S. 64 (1985) .......................................................................... 16

*Green Valley Special Util. Dist. v. City of Schertz, Texas*,
  969 F.3d 460 (5th Cir. 2020) ....................................................11, 14

*Griffith v. Johnston*,
   899 F.2d 1427 (5th Cir. 1990) ............................................................. 28

*Halgren v. City of Naperville*,
   577 F.Supp.3d 700 (N.D. Ill. 2021) ....................................................26

*Harper v. Harris County*,
   21 F.3d 597 (5th Cir. 1994) ...............................................................25

*Health and Hospital Corporation of Marion County v. Talevski*,
   599 U.S. 166 (2023) ......................................................................... 22

*Health Freedom Defense Fund, Inc. v. Carvalho*,
   104 F.4th 715 (9th Cir. 2024)........................................................... 31

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.*,
   302 F.3d 552 (5th Cir. 2002)...............................................................7

*Holloway v. Walker*,
   765 F.2d 517 (5th Cir. 1985) ............................................................ 15

*Idaho v. Coeur d'Alene Tribe of Idaho*,
   521 U.S. 261 (1997) ......................................................................... 16

*In re S. Recycling, L.L.C.*,
   982 F.3d 374 (5th Cir. 2020)...............................................................7

*Jacobson v. Massachusetts*,
   197 U.S. 11 (1905) ............................................................... 27, 30, 31

*Johnson v. Housing Authority of Jefferson Parish*,
   442 F.3d 356 (5th Cir. 2006)........................................................... 18

*Johnson v. Morel*,
   876 F.2d 477 (5th Cir. 1989) ...........................................................25

*Just. Network Inc. v. Craighead Cnty.*,
   931 F.3d 753 (8th Cir. 2019)............................................................ 16

*Klaassen v. Trustees of Indiana Univ.*,
   7 F.4th 592 (7th Cir. 2021).................................................................30

*Kriley v. NW. Mem'l Healthcare*,
  No. 22-1606, 2023 WL 371643 (7th Cir. Jan. 24, 2023) ...................................... 23

*LaBranche v. Becnel*,
  559 Fed. Appx. 290 (5th Cir. 2014) ...................................................... 15

*LeClerc v. Webb*,
  419 F.3d 405 (5th Cir. 2005) .............................................................. 7

*Legaretta v. Macias*,
  603 F. Supp. 3d 1050 (D.N.M. 2022) ................................................... 29

*Lloyd v. Sch. Bd. of Palm Beach Cnty.*,
  570 F. Supp. 3d 1165 (S.D. Fla. 2021) ................................................. 19

*Lone Star Motor Imp., Inc. v. Citroen Cars Corp.*,
  288 F.2d 69 (5th Cir. 1961) ............................................................... 34

*Lyng v. International Union, UAW*,
  485 U.S. 360 (1988) ....................................................................... 28

*Maney v. Brown*,
  91 F.4th 1296 (9th Cir. 2024) ........................................................... 20

*Manyweather v. Woodlawn Manor, Inc.*,
  40 F.4th 237 (5th Cir. 2022) ............................................................. 20

*Markland v. Insys Therapeutics, Inc.*,
  758 F. App'x 777 (11th Cir. 2018) ...................................................... 19

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
  751 F.3d 368 (5th Cir. 2014) ............................................................. 35

*McArthur v. Brabrand*,
  610 F.Supp.3d 822 (E.D. Va. 2022) .................................................... 26

*McCarthy ex rel. Travis v. Hawkins*,
  381 F.3d 407 (5th Cir. 2004) ............................................................. 10

*McDonald v. City of Corinth, Tex*,
  102 F.3d 152 (5th Cir. 1996) ............................................................. 25

*Merrell Dow Pharmaceuticals v. Thompson*,
   478 U.S. 804 (1986) ........................................................................ 19

*Millsap v. Crosby*,
   No. 2:13-CV-80-KS-MTP, 2014 WL 3548842 (S.D. Miss. July 17,
   2014) ......................................................................................... 15

*Mitchell v. Advanced HCS, L.L.C.*,
   28 F.4th 580 (5th Cir. 2022) ............................................................ 20

*Moye v. Clerk, DeKalb Cnty. Superior Court*,
   474 F.2d 1275 (5th Cir. 1973) ......................................................... 15

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ........................................................................ 24

*Muncy v. City of Dallas, Tex.*,
   335 F.3d 394 (5th Cir. 2003) ........................................................... 25

*Navy Seal 1 v. Biden*,
   574 F. Supp. 3d 1124 (M.D. Fla. 2021) ............................................ 19

*Nestlé USA, Inc. v. Doe*,
   141 S. Ct. 1931 (2021) .................................................................... 24

*NiGen Biotech, L.L.C. v. Paxton*,
   804 F.3d 389 (5th Cir. 2015) ........................................................... 12

*Norris v. Stanley*,
   73 F.4th 431 (6th Cir. 2023) ............................................................ 19

*Okpalobi v. Foster*,
   244 F.3d 405 (5th Cir. 2001) ........................................................... 15

*Papasan v. Allain*,
   478 U.S. 265 (1986) ........................................................................ 12

*Perry v. Sindermann*,
   408 U.S. 593 (1972) .......................................................................... 9

*Ralk v. Lincoln Cnty., Ga.*,
   81 F. Supp. 2d 1372 (S.D. Ga. 2000) ................................................. 24

*Republic of Paraguay v. Allen*,
   134 F.3d 622 (4th Cir. 1998) ............................................................. 14

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
   592 U.S. 14 (2020) ............................................................................. 29

*Rutherford v. Harris Cnty., Tex.*,
   197 F.3d 173 (5th Cir. 1999) ............................................................... 8

*Scott v. Flowers*,
   910 F.2d 201 (5th Cir. 1990) ............................................................. 17

*Scott v. Pfizer Inc.*,
   182 Fed. App'x 312 (5th Cir. 2006) ................................................... 19

*Sonnier v. Quarterman*,
   476 F.3d 349 (5th Cir. 2007) ............................................................. 26

*Sosa v. Alvarez Machain*,
   542 U.S. 692 (2004) ........................................................................... 24

*South Dakota v. Dole*,
   483 U.S. 203 (1987) ........................................................................... 22

*Southwestern Bell v. City of Houston*,
   529 F.3d 257 (5th Cir. 2008) ............................................................. 18

*Spec's Family Partners, Ltd. v. Nettles*,
   972 F.3d 671 (5th Cir. 2020) ............................................................. 14

*St. Germain v. Howard*,
   556 F.3d 261 (5th Cir. 2009) ............................................................... 8

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................. 13

*Stewart v. Bernstein*,
   769 F.2d 1088 (5th Cir. 1985) ........................................................... 23

*Stringer v. Whitley*,
    942 F.3d 715 (5th Cir. 2019) ............................................................... 13

*Sweeney v. University of Colorado Hospital Authority*,
    No. 23-CV-2451, 2024 WL 3713835 (D. Colo. July 12, 2024) .................20, 21, 33

*Thomas v. Catlin*,
    141 F. App'x 673 (9th Cir. 2005) ..................................................... 23

*Thurman v. Med. Transportation Mgmt., Inc.*,
    982 F.3d 953 (5th Cir. 2020)............................................................ 23

*United States ex rel. Adrian v. Regents of Univ. of Calif.*,
    363 F.3d 398 (5th Cir. 2004)............................................................ 35

*United States v. Green*,
    964 F.2d 365 (5th Cir. 1992) .............................................................. 8

*United States v. Page*,
    232 F.3d 536 (6th Cir. 2000)............................................................ 24

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,
    535 U.S. 635 (2002) ......................................................................... 11

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
    945 F.3d 206 (5th Cir. 2019) ............................................................ 29

*Washington v. Davis*,
    426 U.S. 229 (1976) ......................................................................... 26

*We The Patriots USA, Inc. v. Hochul*,
    17 F.4th 266 (2d Cir.), *op. clarified*, 17 F.4th 368 (2d Cir. 2021), *and
    cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022) ............................ 27

*Whole Woman's Health v. Jackson*,
    595 U.S. 30 (2021) .......................................................................... 10

*Williams v. Brown*,
    567 F. Supp. 3d 1213 (D. Or. 2021) ........................................... 26, 27

*Yohey v. Collins,*
   985 F.2d 222 (5th Cir. 1993) ............................................................. 10

**Statutes**

10 U.S.C. § 980 ................................................................................. 19, 20

21 U.S.C. § 360bbb-3 ....................................................................... 17, 20

21 U.S.C. § 360bbb-3(c)(2)(A)(i) ........................................................... 30

21 U.S.C. § 360bbb-3(k) ........................................................................ 30

28 U.S.C. § 1291 ..................................................................................... 1

28 U.S.C. § 1331 ..................................................................................... 1

42 U.S.C. § 1983 ................................................................................... 16

42 U.S.C. § 247d-6d(e)(1) ..................................................................... 19

Tex. Lab. Code § 201.012 ........................................................................ 3

Tex. Lab. Code § 207.002 ........................................................................ 6

Tex. Lab. Code § 207.003 ........................................................................ 6

Tex. Lab. Code § 207.044 ........................................................................ 3

Tex. Lab. Code § 212.201 ...................................................................... 14

Tex. Lab. Code § 301.001 ........................................................................ 9

Tex. Lab. Code § 301.002 ..................................................................... 2, 9

Tex. Lab. Code Ann. § 212.151 ............................................................. 13

**Rules**

Fed. R. App. P. 28 ................................................................................... 7

Fed. R. Evid. 201(b) .............................................................................. 31

## Regulations

45 C.F.R. § 46 .................................................................................. 21

45 C.F.R. § 46.122 .......................................................................... 20

45 C.F.R. §§ 46.101, *et seq*. ......................................................... 22

## STATEMENT OF JURISDICTION

This Court has appellate jurisdiction under 28 U.S.C. § 1291 over Appellant's appeal of a final dismissal by the district court. ROA.747. As a general matter, the district court has federal question jurisdiction under 28 U.S.C. § 1331 over claims brought pursuant to federal statutes and the U.S. Constitution. However, the Court lacks subject-matter jurisdiction due to the State Appellees' sovereign immunity.

## STATEMENT OF THE ISSUES

1. Appellants are not challenging the dismissal of their claims against Appellee Cecile Erwin Young. Did Appellants also waive their claims against Appellee Bryan Daniel ("Daniel") on appeal?

2. Did the district court properly dismiss Appellants' federal claims against Daniel due to sovereign immunity and because Plaintiff failed to state a cognizable claim?

3. Did the district court properly dismiss the federal claims against Daniel with prejudice without offering Appellants an opportunity to amend their "Corrected Second Amended Complaint" because they had already amended with respect to the State Appellees and amendment would be futile.

## INTRODUCTION

This case was brought by over 100 healthcare workers who allege they were terminated by Houston Methodist Hospital System institutions (the "Houston Methodist Appellees") for refusing a COVID-19 vaccine requirement. ROA.1320, 1327–44. Appellants subsequently named Cecile Erwin Young ("Young") and Bryan Daniel ("Daniel"), (collectively, the "State Appellees"), as Defendants. ROA.1320, 1345. They alleged that Young—as Executive Commissioner of the Texas Health and Human Services Commission ("HHSC")—should have inexplicably interfered with the Houston Methodist Appellees' employment decisions. ROA.1345, 1417–18, 1444–56. They also alleged that Daniel, one of three Texas Workforce Commission ("TWC") Commissioners—should not have voted to deny certain Plaintiffs' unemployment benefits claims. ROA.1456–60; *see also* Tex. Lab. Code § 301.002 (describing three-member Commission).

The district court remanded all state law claims to state court and dismissed Appellants' federal claims, finding: 1) they had failed to identify any federal statute establishing a viable cause of action; and 2) their constitutional arguments are foreclosed by binding Supreme Court precedent. ROA.1789–90, 1792–1807. Appellants do not appeal the district court's dismissal of claims against Young but

do cursorily state they are appealing the dismissal of their claims against Daniel. Appellant's Br. at 10, 65.

## STATEMENT OF THE CASE

### A.     Factual Allegations

Appellants are current or former employees of the Houston Methodist Hospital who challenge the Houston Methodist Hospital's COVID-19 vaccine requirement in 2021. ROA.1327–28. They allege that that COVID-19 vaccines are investigational drugs given emergency use authorization before full licensure by the Federal Food & Drug Administration ("FDA"). Appellant's Br. at 42, 56. They allege they had a right to refuse the COVID-19 vaccination but nonetheless remain employed by Houston Methodist despite their employer's requirement. Appellants do not claim they actually were clinical subjects in an investigational drug trial by Houston Methodist, but instead admit that they were employed by a hospital that also administered COVID-19 vaccines to the public. Appellants' Br. at 39, 42–44, 59–61.

The only specific allegation against Daniel is that he voted to deny Appellant, Bob Nevans' ("Nevans") unemployment benefits claim based on a finding that Nevans violated Houston Methodist's workplace policy, thereby disqualifying him from receiving unemployment benefits under the Texas Labor Code. Appellants' Br.

at 10, 65; ROA.1456–60; *see also* Tex. Lab. Code § 207.044 (disqualification from unemployment benefits for misconduct); *Id.* § 201.012 (defining misconduct to include violation of employer policy).

## B.    Procedural History

Appellants filed this cause of action in the 284th District Court of Montgomery County, Texas—on April 10, 2023. ROA.51. Defendants, the Methodist Hospital d/b/a Houston Methodist Hospital and Houston Methodist, the Woodlands Hospital (collectively "Houston Methodist") removed this action to federal court on May 8, 2023. ROA.51. On June 21, 2023, Plaintiffs filed an Amended Complaint and added the TWC, HHSC, and Texas Medical Board, as Defendants, among others. ROA.224. Plaintiffs then amended their complaint to drop the claims against the State agencies and proceed only against Daniel and Young in their official and individual capacities. ROA.1096. They then filed a "Corrected Second Amended Complaint." ROA.1345–56. Appellants asserted claims against the State Appellees under section 1983 alleging violations of the U.S. Constitution and various statutory and non-statutory sources, breach of contract, and state tort law. ROA.1436-60.

Defendants all filed motions to dismiss. ROA.859, 1604. On September 30, 2024, the district court partially granted the motions to dismiss, dismissing all federal claims and remanding the state law claims to state court. ROA.1789. Appellants subsequently appealed. With respect to the State Appellees, they appealed only the dismissal of one Appellant's claims against Daniel, but expressly do not appeal the dismissal of claims against Young. Appellants' Br. at 10, 65.

## SUMMARY OF THE ARGUMENT

Appellants did not adequately brief their arguments against the dismissal of their claims against Daniel. They failed entirely to argue how Eleventh Amendment immunity does not bar their claims against Daniel or that those claims fit within the *Ex parte Young* exception. They further fail to analyze the law relating to the "unconditional conditions doctrine" or apply it—or any other caselaw—whatsoever to their factual allegations specific to Daniel. Accordingly, they have waived all claims against Daniel.

Even if Appellants had presented such arguments, they would be fruitless because Appellants are not seeking prospective relief to enjoin the ongoing enforcement of an alleged violation of federal law, as necessary to fit within *Ex parte Young*. Moreover, the district court correctly ruled that the hodgepodge of sources

Appellants cite fails to identify any viable cause of action under any federal statute. Likewise, Appellants have failed to state a claim under the Fifth or Fourteenth Amendment's Due Process and Equal Protection Clauses.

Appellants merely allege that Houston Methodist Appellees forced them to choose between their present employment and receiving a vaccine. They further allege that some Appellants were denied unemployment benefits for violating workplace policies, which somehow constituted a state-imposed COVID-19 vaccine requirement. But the record allegations do not demonstrate that Daniel or any other state officer imposed a COVID-19 vaccine requirement on the receipt of unemployment benefits. Even assuming arguendo an unemployment benefits administrative opinion applying state law disqualifying a claimant from receiving benefits because they were discharged for violating a workplace policy could, in fact, constitute a government requirement to receive a vaccine—or investigational drug—Appellants have failed to allege any unconstitutional condition on the receipt of government benefits.[1] Further, even if such denial could theoretically violate any

---

[1] Also, since one must be unemployed to receive unemployment benefits, the Appellants, under the scenario they present, would not have received benefits even if they had received the COVID-19 vaccine, since they would have presumably not been terminated. *See* ROA.1328 (alleging termination for noncompliance with vaccine requirement); *see also* Tex. Lab. Code §§ 207.002, .003 (requiring total or partial unemployment for benefits entitlement).

of the federal statutes or other sources cited by Appellants, none of these sources confer a right of action on Appellants—neither directly under the statute nor under 42 U.S.C. § 1983.

The district court correctly dismissed all claims in this suit. Further, because amendment would be futile, and Appellants already had opportunities to amend—and did so with respect to their claims against state entities and officers—the district court did not abuse its discretion by dismissing with prejudice without offering another opportunity to amend.

## STANDARD OF REVIEW

This Court reviews an appeal from a motion to dismiss de novo, and the Fifth Circuit applies the same standards as the district court. *LeClerc v. Webb*, 419 F.3d 405, 413 (5th Cir. 2005) (citing *Bombardier Aerospace v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 352 (5th Cir. 2003)); *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 557–58 (5th Cir. 2002). The Court may affirm on any ground supported by the record, including one not reached below. *In re S. Recycling, L.L.C.*, 982 F.3d 374, 382 (5th Cir. 2020) (citing *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012)).

A district court's order to dismiss with prejudice without offering leave to amend pleadings is reviewed for abuse of discretion. *St. Germain v. Howard*, 556 F.3d 261, 262 (5th Cir. 2009).

## ARGUMENT

### A.    Appellants waived their claims against Daniel due to inadequate briefing.

Parties that fail to adequately brief an issue on appeal waive any arguments on that issue. *See DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 489 n.1 (5th Cir. 2018). When a party pursues an argument on appeal but does not analyze relevant legal authority, the party abandons that argument. *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 414 (5th Cir. 2021); *see also United States v. Green*, 964 F.2d 365, 371 (5th Cir. 1992) (noting that the failure to provide legal or factual analysis constitutes waiver of an issue); *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 193 (5th Cir. 1999) (holding that "oblique reference" was insufficient to adequately brief issue on appeal); Fed. R. App. P. 28 (requiring brief to contain argument).

Appellants have inadequately briefed their arguments against Daniel. Their opening brief is devoid of any analysis of the Eleventh Amendment immunity arguments raised at the district court. Appellants' Br. at 10, 65. Indeed, Appellants scarcely mention their claims against Daniel—on merely two pages of their approximately 58-page brief. *Id*. They cite two cases in a footnote—one which held

that a professor's lack of a contractual right to reemployment did not doom his First Amendment claim, and one which challenged—in 1926—the constitutionality of a California statute as applied to private carriers who were being required to submit to regulation as a *common* carrier and obtain a certificate of public convenience before continuing to operate their business on public highways. Appellants' Br. at 65 (citing *Perry v. Sindermann*, 408 U.S. 593 (1972); *Frost v. R.R. Comm'n of State of Cal.*, 271 U.S. 583 (1926)). Appellants' brief is devoid of any analysis of the two cited cases. They make no attempt to apply these cases to the particular facts and legal claims they advanced against Daniel at the district court, which are distinct from the legal theories advanced against the Houston Methodist Appellees. *Compare* Appellants' Br. at 10, 65 *with id.* at 11–14, 40.

Appellants fail to cite any caselaw that substantiates their particular contention against Daniel—that they have a federal cause of action based on a state administrative order denying unemployment benefits allegedly due to noncompliance with a private employer's workplace policy requiring the COVID-19 vaccine. *Id.* Appellants' opening brief is already almost at the 13,000 word limit. Appellants' Br. at 68. Thus, incorporation of argument from other pleadings is off

the table. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993). For these reasons, Appellants waived their arguments and claims against Daniel.

Lastly, Appellants' Complaint mentioned a handful of Plaintiffs with alleged grievances against Daniel who are not mentioned in Appellants' opening brief on appeal. *Compare* ROA.1458–59 *with* Appellants' Br. at 10, 65. Nevans is the only Appellant they mention when discussing Daniel. Appellants' Br. at 10, 65. By failing to expressly raise any claims by any other Plaintiff against Daniel whatsoever, they have further waived any claims of these individuals.

## B.     Sovereign immunity bars the claims against Daniel.

It is undisputed that Daniel, as Chairman of the TWC and the Commissioner Representing the Public, is a state officer. *See generally* Appellees' Br.; *see also* Tex. Lab. Code §§ 301.001, .002. Sovereign immunity under the Eleventh Amendment "generally precludes actions against state officers in their official capacities." *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004). There is only a narrow exception to sovereign immunity, carved out by the Supreme Court in *Ex parte Young*, that allows private litigants to file suit to prevent state officials from enforcing state laws that are contrary to federal law. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). In determining whether the doctrine of *Ex parte*

*Young* applies, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal marks omitted).

### 1. The Eleventh Amendment bars their claims against Daniel because Appellants did not allege an ongoing violation of law.

A "straightforward inquiry" of the operative Complaint reveals that Appellants did not allege that Daniel is engaged in an "ongoing" violation of federal law. *See Green Valley Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460, 471 (5th Cir. 2020). Rather, Appellants alleged that, on November 22, 2022, almost one year after the filing of their "Corrected Second Amended Complaint," the TWC sent one Appellant—Nevans—a final decision determining he had been overpaid unemployment benefits. ROA.1458. They claimed that Daniel "breached the duties of his office, breached his oath of office that he would be faithful to the Constitution, and deprived Plaintiffs of their rights under the Fifth and Fourteenth Amendments of the United States Constitution, as well as rights conferred by federal statutes." ROA.1459. Accordingly, *Ex parte Young* is inapplicable because a straightforward inquiry of the Complaint shows that Appellants did not allege that Daniel "*is violating*" federal law. They only allege that he purportedly did so in the past.

Accordingly, the claims against Daniel should be dismissed due to his Eleventh Amendment immunity. *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) (emphasis in original); *Papasan v. Allain*, 478 U.S. 265, 278 (1986).

### 2.    Appellants do not seek prospective relief.

Relief that in essence would compensate a party injured by a state official in the past is barred—whether the relief requested is explicitly in terms of monetary damages or would be tantamount to an award of damages. *Papasan*, 478 U.S. at 278. What is important is the substance rather than the form (i.e. declaratory, injunctive, or monetary) of the relief sought. *See id*. A "backwards-looking, past-tense declaratory judgment is "tantamount to an award of damages for a past violation of law, even though styled as something else." *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020). A straightforward inquiry of the sought-after declarations shows Appellants are seeking retrospective relief, which is barred.

Appellants first seek a declaration stating that Daniel "is aware" of a "state-enforced custom" to deny unemployment benefits under certain fact patterns but has allowed it to proceed. ROA.1459. Appellants frame the declaration with present-tense language, but as applied to this case, it is nonsensical and fails the redressability test for standing.

A plaintiff is required to show a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury for "case or controversy" requirement to be met. *See Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 79 (1978). "Because injunctive and declaratory relief 'cannot conceivably remedy any past wrong,' plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) (holding that "psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury"). This declaration would have no impact, neither on unemployment benefits claims that have already been adjudicated and finally decided, nor on any other conceivable issue. Appellants have therefore failed to seek proper prospective relief as required for their claims to fall within the narrow *Ex Parte Young* exception to Daniel's sovereign immunity.

Appellants then asked the Court to declare that an adverse quasi-judicial decision from years ago violated federal law. ROA.1459–60. The plain text of this language shows it is not prospective. A declaration that would void a final state agency decision is "quintessentially retrospective" and therefore "out of bounds"

under *Ex parte Young*. *Green Valley*, 969 F.3d at 473 (*quoting Republic of Paraguay v. Allen*, 134 F.3d 622, 628 (4th Cir. 1998)). For example, in *Spec's Family Partners, Ltd. v. Nettles,* the plaintiff sought a declaration that Texas Alcoholic Beverage Commission ("TABC") officials "violated its rights" and that the TABC interpretations of various statutes and rules were incorrect. *Spec's Family Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020). Spec's also sought an injunction prohibiting TABC from repeating the various acts Spec's alleged violated its rights. *Id*. But because the plaintiff did not allege that the TABC or its officials were currently engaged in any of those behaviors with respect to it, nor that such actions were imminent, the Fifth Circuit found that any equitable relief would be retrospective. *Id*.

As in *Spec's*, under Appellants' own allegations, Nevans has received a final decision and all investigations and administrative proceedings concerning his unemployment benefits claim are complete. ROA.1458. Appellants do not allege that Daniel is currently enforcing an unconstitutional law or rule in an ongoing unemployment benefits adjudication. ROA.1458–68; Appellants' Br. at 10, 65. Further, any such allegation would be implausible and fail as a matter of law because Daniel serves on the Commission in a quasi-judicial—not enforcement—capacity.

*See* Tex. Lab. Code Ann. § 212.151 (granting quasi-judicial review authority to commissioners). *Ex parte Young* applies to suits against officers with "some connection with the *enforcement*" of allegedly unconstitutional state act. *See Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001) (emphasis added).

This fact compounds the problems with Appellants' claims. Appellants seek declaratory relief regarding judicial or quasi-judicial acts—such as rendering a decision—but "federal courts have no authority to direct state courts or their judicial officers in the performance of their duties." *Millsap v. Crosby*, No. 2:13-CV-80-KS-MTP, 2014 WL 3548842, at *4 (S.D. Miss. July 17, 2014) (citing *LaBranche v. Becnel*, 559 Fed. Appx. 290, 290 (5th Cir. 2014); *Holloway v. Walker*, 765 F.2d 517, 525 (5th Cir. 1985); *Moye v. Clerk, DeKalb Cnty. Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973)). Moreover, there is simply no standing between "a judge who adjudicates claims under a statute [such as the Texas Labor Code] and a litigant who attacks the constitutionality [facially or as-applied] of the statute." *Bauer v. Texas*, 341 F.3d 352, 361 (5th Cir. 2003). Appellants cannot save their claims by referring to the TWC decisions as "policies" or "customs."[2] A plaintiff seeking to invalidate a prior

---

[2] Further, aggrieved unemployment benefits claimants can seek judicial review of unemployment benefits decisions in state court. Tex. Lab. Code § 212.201; *see* also *City of Houston v. Morris*, 23 S.W.3d 505, 508 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (holding state courts review

judicial action cannot avoid dismissal of their claims by referring to the judges'
actions as policies or customs. *See e.g., Just. Network Inc. v. Craighead Cnty.*, 931 F.3d
753, 762–64 (8th Cir. 2019). "[C]ompensatory or deterrence interests are
insufficient to overcome the dictates of the Eleventh Amendment." *Green v.
Mansour*, 474 U.S. 64, 68 (1985). These principles should all apply whether the
defendant is a state court judge or Commissioner issuing rulings in a quasi-judicial
capacity on unemployment benefits claims.

For all these reasons, Eleventh Amendment immunity bars Appellants' claims
against Daniel. The district court's decision should be affirmed.

## C. Appellants fail to state a claim—neither directly nor through Section 1983.

### 1. There is no right of action under the federal statutes cited in the operative Amended Complaint.

Appellants seem to invoke the "unconstitutional conditions doctrine,"
which by its terms can only conceivably seek to vindicate constitutional—not
statutory—rights. ROA.1155; Appellants' Br. at 10, 65; *see also Dep't of Tex.,
Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 437 n.4 (5th

---

whether TWC decision was made without regard to the law). Accordingly, the availability of an
adequate state court forum to hear the argument that Daniel's quasi-judicial decision was contrary
to law renders a federal suit such as this under *Ex parte Young* inappropriate. *See Idaho v. Coeur
d'Alene Tribe of Idaho*, 521 U.S. 261, 274 (1997).

Cir. 2014) (en banc). Further, by arguing only that Daniel violated constitutional rights—but not alleged statutory rights—in their opening brief, Appellants have waived and abandoned any statutory claims against Daniel for the reasons previously discussed. *Compare* ROA.1456–57 *with* Appellants' Br. at 10, 65. Nonetheless, out of an abundance of caution, these statutes will be addressed.

Even if *Ex parte Young* did apply and the unconstitutional conditions doctrine applied to statutory claims, Plaintiffs' legal theories are baseless.[3] None of the sources cited by Appellants contain express abrogations of sovereign immunity, nor do they even, as discussed herein, create private rights of action permitting suit against the State Appellees—neither directly, nor through 42 U.S.C. § 1983.

Even when a federal statute has been violated, that does not automatically give rise to a private cause of action in favor of that person. *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979). Whether a federal statute creates a private right of action,

---

[3] Further, since they are seeking equitable (declaratory) relief that could only be possibly obtained from a state officer in his official capacity, any "individual capacity" claims—to the extent maintained on appeal—are devoid of merit and should be disregarded out of hand. *See Scott v. Flowers*, 910 F.2d 201, 213 (5th Cir. 1990) (noting relief sought could only be obtained from defendants in official capacity); *see also Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (holding that a declaration directed at state policy could be obtained only from the defendants in their official capacities, not as private individuals."). If Plaintiffs were seeking damages from Daniel in his individual capacity, qualified immunity would bar such relief. *See Darden v. City of Fort Worth*, Texas, 880 F.3d 722, 727 (5th Cir. 2018) (listing elements of qualified immunity defense); *infra* § D (showing no clearly established rights violated).

or whether a right guaranteed by a federal statute may be enforced through section 1983, unambiguous congressional intent to confer an individual right is a prerequisite for both. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283–84 (2002). If the source of the alleged right is a federal statute, then "[i]t is essential to a private enforcement action under § 1983 . . . that the federal statute in question *unambiguously* give rise to privately enforceable, substantive rights." *Johnson v. Housing Authority of Jefferson Parish*, 442 F.3d 356, 359 (5th Cir. 2006) (emphasis in original). "The inquiry in this context is virtually the same as that involved in private rights of action implied directly from a federal statute rather than by way of § 1983." *Johnson*, 442 F.3d at 359. "It is presumed Congress did not intend to create a private enforceable right; the burden is on the plaintiff to show otherwise." *Southwestern Bell v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). "[T]he plaintiff has the relatively heavy burden to show Congress intended private enforcement, and must overcome the presumption that Congress did not intend to create a private cause of action." *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006).

None of the sources cited in Appellant's "Corrected Second Amended Complaint" contain unambiguous Congressional intent to provide any cause of action.

First, there is no express or implied right—directly or through 42 U.S.C. § 1983—under 21 U.S.C. § 360bbb-3 (the informed consent provisions of the Federal Food, Drug, and Cosmetic Act ("FDCA")). *See Bridges v. Methodist Hosp.*, No. 21-20311, 2022 WL 2116213, at *2 (5th Cir. June 13, 2022) (affirming dismissal of 21 U.S.C. § 360bbb-3 claims); *see also Navy Seal 1 v. Biden*, 574 F. Supp. 3d 1124, 1130 (M.D. Fla. 2021); *Lloyd v. Sch. Bd. of Palm Beach Cnty.*, 570 F. Supp. 3d 1165, 1175 (S.D. Fla. 2021) (holding no right of action through Section 1983). The Federal Food, Drug, and Cosmetic Act ("FDCA") of which 21 U.S.C. § 360bbb-3 is a part, says that its requirements may only be enforced by the United States government. *Markland v. Insys Therapeutics, Inc.*, 758 F. App'x 777, 779 (11th Cir. 2018); *see also Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 817 (1986) (holding that private actors have no federal cause of action for a violation of the FDCA); *Scott v. Pfizer Inc.*, 182 Fed. App'x 312, 315 (5th Cir. 2006) ("Nor has [the plaintiff] shown that . . . the Food, Drug, and Cosmetic Act . . . create[s] a private right of action."). Moreover, Appellants do not allege that Daniel was a medical provider for purposes of providing or potentially providing them a vaccine, another flaw fatal to these claims. *See Norris v. Stanley*, 73 F.4th 431, 438 (6th Cir. 2023); *see also* ROA.10, 65.

Second, the PREP Act "shields covered persons, such as pharmacies and drug manufacturers, from suits and liability during a public-health emergency." *Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237, 243 (5th Cir. 2022) (quotation marks omitted). If the liability shield applies, "the sole remedy is compensation from a fund administered by the federal Secretary" of Health and Human Services. *Id.* (quotation marks omitted). This compensation is determined by an administrative process. *Mitchell v. Advanced HCS, L.L.C.,* 28 F.4th 580, 586 (5th Cir. 2022). The only cause of action under the PREP Act is a suit "for death or serious physical injury proximately caused by [that person's] willful misconduct." *Manyweather*, 40 F.4th at 243. Such claims must be brought exclusively in the United States District Court for the District of Columbia, and only after administrative exhaustion. *Id.*; 42 U.S.C. § 247d-6d(e)(1). Self-evidently, Appellants' claims—brought originally in state court, removed to the Southern District of Texas, and not asserting death or physical injury—do not meet these requirements. ROA.51; Appellants' Br. at 10, 65. Appellants' claims asserting rights under the PREP Act were thus correctly dismissed. *See Sweeney v. University of Colorado Hospital Authority*, No. 23-CV-2451, 2024 WL 3713835, at *8 (D. Colo. July 12, 2024); *see also Maney v. Brown*, 91 F.4th 1296, 1303 (9th Cir. 2024) ("Congress intended to expressly immunize covered

persons from § 1983 actions for claims covered by the [PREP] Act, even if those claims are federal constitutional claims.").

Third, 10 U.S.C. § 980 contains no language showing unambiguous intent to establish a right to sue Daniel—or anyone—to enforce regulations governing funds appropriated to the Department of Defense. *See* 10 U.S.C. § 980; *see also Chem. Weapons Working Grp., Inc. (CWWG) v. U.S. Dep't of the Army*, 111 F.3d 1485, 1494 (10th Cir. 1997) (holding Defense Authorization Act did not imply private right of action). Even if the statute did confer a right of action, Plaintiffs failed to allege that Daniel misused funds appropriated to the Department of Defense.[4] As such, they failed to state a claim directly under this statute or through Section 1983.

Fourth, to the extent Appellants seek to bring a suit for noncompliance with conditions imposed on federal funding legislation pursuant to the Constitution's Spending Clause, they have failed to state a viable right of action for the reasons discussed above and below. *See, e.g., Sweeney*, 2024 WL 3713835 at *16–17 (dismissing claims under the Spending Clause based on 21 U.S.C. § 360bbb-3; 45 C.F.R. § 46.122; and 10 U.S.C. § 980). Under the Spending Clause, Congress may

---

[4] While Appellants claimed they alleged that "mandated drugs were procured with Department of Defense funding" they cite merely to a statement made in Response to a Motion to Dismiss, but not to an allegation within the four corners of the Complaint. *See* Appellants' Br. at 55 (citing ROA.1654).

attach conditions on the receipt of federal funds and condition receipt upon compliance by the recipient with federal statutory and administrative directives. *South Dakota v. Dole*, 483 U.S. 203, 206 (1987). An instance in which Spending Clause legislation creates "§ 1983-enforceable rights," in short, is an "atypical case[.]" *Health and Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166, 183 (2023). "In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Gonzaga*, 536 U.S. at 280.

Thus, to the extent alleged on appeal, the absence of the requisite rights-creating language in any of the sources referenced by the Appellants dooms any claim purportedly brought under or adjacent to the Spending Clause against Daniel. The district court correctly dismissed any Spending Clause claim, and this Court should affirm.

## 2. Federal rules or agreements cannot be sources of private rights of action or rights securable under 42 U.S.C. § 1983.

Only Congress can create Article III jurisdiction. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Id.* Federal regulations alone

cannot create rights enforceable through section 1983. *Gracia v. Brownsville Housing*, 105 F.3d 1053, 1057 (5th Cir. 1997); *Stewart v. Bernstein*, 769 F.2d 1088, 1093 (5th Cir. 1985); *Thurman v. Med. Transportation Mgmt., Inc.*, 982 F.3d 953, 957–58 (5th Cir. 2020). Even if federal regulations could create a cause of action or right securable under section 1983, Appellants cannot point to any "rights-conferring" language in the non-statutory sources to which they cite. There is none. *See generally* Appellants' Br. Accordingly, Plaintiffs' claims asserting rights under federal regulations or agreements—namely, 45 C.F.R. § 46, "Federal Wide Assurance agreements," or an "EUA Scope of Authorization letter,"—fail as a matter of law and were correctly dismissed. *See Thomas v. Catlin*, 141 F. App'x 673 (9th Cir. 2005) (finding no private right of action under 45 C.F.R. §§ 46.101, *et seq.*); *Curtis v. Inslee*, 709 F. Supp. 3d 1257, 1269 (W.D. Wash. 2023) (finding no right of action under Federal Wide Assurance).

### 3. There are no rights in the Belmont Report or Article VII of the ICCPR Treaty enforceable through § 1983.

As before, the Belmont Report is not a federal statute and cannot create rights enforceable in federal court. *Kriley v. NW. Mem'l Healthcare*, No. 22-1606, 2023 WL 371643, at *2 (7th Cir. Jan. 24, 2023). Likewise, the International Covenant on Civil and Political Rights ("ICCPR") does not create such rights. *Ralk v. Lincoln Cnty.,*

*Ga.*, 81 F. Supp. 2d 1372, 1380 (S.D. Ga. 2000); *Doe 1 v. Michigan Dep't of Corr.*, No. 13-14356, 2014 WL 2207136, at *8 (E.D. Mich. May 28, 2014) (*citing Sosa v. Alvarez Machain*, 542 U.S. 692, 735 (2004)); *see also in Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1939–40 (2021) (explaining that federal courts cannot entertain rights of action based on international law beyond limited (inapplicable) types); *United States v. Page*, 232 F.3d 536, 540 (6th Cir. 2000) (explaining that "international treaties do not create rights that are privately enforceable in federal courts"). Accordingly, any claim brought under these sources was correctly dismissed.

## D.    Appellants fail to state a Section 1983 claim under the U.S. Constitution.

Again, it is unclear what specific claims Appellants are maintaining on appeal against Daniel. It appears they cursorily allege he violated only their substantive due process rights, not the Equal Protection Clause. Appellants' Br. at 10, 65; *but see id.* at 61–62 (asserting "Texas" could not treat them differently). As discussed, all claims against Daniel are waived due to inadequate briefing and furthermore barred by sovereign immunity. *Supra* §§ A, B. But even if they were not, they fail as a matter of law.

First, procedural due process includes the right to notice and the right to be heard. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). In an

employment context, since Texas is an at-will state, employment may be terminated at any time by either party with or without cause, and without any procedural due process. *McDonald v. City of Corinth, Tex*, 102 F.3d 152, 155–56 (5th Cir. 1996). Since Appellants fail to articulate any contract, rule, or policy that "specifically and expressly" provides them a right to procedural due process in connection with their prior employment, they cannot state a procedural due process claim. *Id.*; *see also Muncy v. City of Dallas, Tex.*, 335 F.3d 394, 398 (5th Cir. 2003). They certainly cannot state such a claim against a state officer who was *not* their employer. Moreover, while they clearly allege disagreement on substance, Appellants fail to argue that they were denied notice or opportunity to respond to any TWC decision, much less that Daniel was personally involved. Appellants' Br. at 10, 62–63, 65. Accordingly, Appellants have not alleged a procedural due process violation by Daniel.

As for equal protection, "[t]o state a claim under the Equal Protection Clause, a section 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Johnson v. Morel,* 876 F.2d 477, 479 (5th Cir. 1989), *abrogated on other grounds by Harper v. Harris County,* 21 F.3d 597 (5th Cir. 1994) (citing *Washington v. Davis,* 426 U.S. 229, 247-

48 (1976)). Appellants have not pled they were members of a "suspect" or "protected class." *See* Appellants' Br. at 62 (defining their "class" as "Plaintiffs who exercised the right to refuse EUA/PREP Act investigational drugs"). Appellants cite to no authority—nor could they—defining this group as suspect under the Constitution. *See Sonnier v. Quarterman*, 476 F.3d 349, 368 n. 17 (5th Cir. 2007) (defining suspect class).

Numerous courts agree that vaccination status is not a legally protected class. "[U]nvaccinated individuals do not constitute a suspect class." *George v. Grossmont Cuyamaca Cmty. Coll. Dist. Bd. of Governors,* No. 22-cv-0424-BAS-DDL, 2022 WL 16722357, at *10 (S.D. Cal. Nov. 4, 2022); *Halgren v. City of Naperville,* 577 F.Supp.3d 700, 753 (N.D. Ill. 2021) ("Plaintiffs have not identified any legal support for the notion that vaccination status alone is a traditional suspect (or quasi-suspect) class within the meaning of the Equal Protection Clause."); *Williams v. Brown,* 567 F. Supp. 3d 1213, 1228 (D. Or. 2021) ("The Court is fully in agreement with this growing consensus that no fundamental right or suspect classification is implicated by the Oregon vaccine mandates . . ."); *see also McArthur v. Brabrand,* 610 F.Supp.3d 822, 839-42 (E.D. Va. 2022) (dismissing plaintiff's equal protection claim because plaintiff failed to combat "several cases holding that unvaccinated people do not

constitute a suspect class"). Accordingly, Appellants' equal protection claims fail as a matter of law.

As for substantive due process, the district court correctly dismissed Appellants' claims because refusal of a vaccine is not a fundamental right and vaccine requirements are rationally related to a conceivable, legitimate state interest—preventing the spread of a virus. *See Jacobson v. Massachusetts*, 197 U.S. 11 (1905); *see also Bridges v. Houston Methodist Hosp.*, 543 F. Supp. 3d 525, 527 & n.3 (S.D. Tex. 2021), *aff'd sub nom.*, No. 21-20311, 2022 WL 2116213 (5th Cir. June 13, 2022); *Brown*, 567 F. Supp. 3d at 1226 (joining the "growing consensus" of courts recognizing that "there is no fundamental right under the Constitution to refuse vaccination" and collecting cases). The Supreme Court has consistently recognized that the Constitution embodies no fundamental right to resist a vaccine requirement imposed in the public interest, in the face of a public health emergency. *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir.), *op. clarified*, 17 F.4th 368 (2d Cir. 2021), *and cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022) (*citing Jacobson*, 197 U.S. at 25–31). And both the Supreme Court and Fifth Circuit have directed the judiciary to refrain from creating new fundamental rights. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) ("The doctrine of judicial self-

restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field."); *Albright v. Oliver*, 114 S.Ct. 807, 812 (1994) (noting Court's reluctance to expand concept of substantive due process); *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990) (noting that courts must resist temptation to augment substantive reach of Fourteenth Amendment, particularly if it requires redefining category of rights deemed "fundamental"). This legal conclusion is also warranted, if not mandated, by the Supreme Court's test articulated in *Dobbs v. Jackson Women's Health Organization*, which as applied here would hold that the alleged right to be free from medical treatment or investigational drugs is not mentioned in the Constitution, nor is it "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *See* 597 U.S. 215, 231 (2022).

Given the absence of a fundamental right—or protected class—the standard of review is the rational basis test. *See Lyng v. International Union, UAW*, 485 U.S. 360, 370 (1988). The rational basis test is "typically quite deferential." *Dep't. of Agriculture v. Moreno*, 413 U.S. 528, 533 (1973). Under rational basis review, the question is whether there is merely a rational relationship between the challenged action, policy, or classification and a conceivable legitimate governmental objective. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 945 F.3d 206, 225 (5th Cir.

2019); *FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174–75 (5th Cir. 1996). The conceivable rational basis need not be the actual motivation. *See F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).

"Vaccine requirements are a common feature of the provision of healthcare in America: Healthcare workers around the country are required to be vaccinated for diseases such as hepatitis B, influenza, and measles, mumps and rubella." *Biden v. Missouri*, 595 U.S. 87, 95 (2022). "[S]temming the spread of COVID-19 ... is not only legitimate, but is 'unquestionably a compelling interest.'" *Legaretta v. Macias*, 603 F. Supp. 3d 1050, 1067 (D.N.M. 2022) (*quoting Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020)). Requiring those who work in a hospital or healthcare facility to take preventative measures against the spread of COVID-19 is easily rationally related to that interest. *Id.* Accordingly, the district court correctly dismissed the claims against Daniel. Assuming arguendo the fact pattern described by Appellants can charitably be considered a governmental requirement to be vaccinated to receive unemployment benefits, it would not violate the Constitution.[5]

---

[5] It cannot, because Appellants do not allege that Daniel's ruling was based on Nevans' unvaccinated status, but rather it was based on Nevans' refusal to follow a private employer's workplace policy. *See* ROA.1458.

*See Klaassen v. Trustees of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (upholding vaccination against COVID-19 as a condition of university enrollment).

Appellants argue that *Jacobson* does not apply because they alleged that the COVID-19 vaccine was an "investigational drug" given emergency use authorization but not fully licensed by the FDA. Appellants' Br. at 41–42, 56. While Appellants may insist they are merely asking the Court to accept factual allegations as true, in fact, they are asking the Court to accept the *legal* proposition that *Jacobson* does not apply to a vaccine that is classified as investigational and approved for emergency use authorization. *See id*. This argument is unavailing. Nothing in the *Jacobson* opinion distinguishes between vaccines that have been given full FDA approval and vaccines that have been given emergency use authorization. *See Boysen v. PeaceHealth*, No. 6:23-CV-01229-AA, 2024 WL 3888682, at *6 (D. Or. Aug. 19, 2024) ("But the Court in *Jacobson* did not look to the text of a mandate, or any licensing label put on the smallpox vaccine to determine whether it was a vaccine that prevents smallpox."). Stated differently, whether the FDA had given COVID-19 vaccines a legal classification for "safety and efficacy to treat, cure, or prevent any known disease," or instead given emergency use authorization to prevent COVID-19 is entirely irrelevant under *Jacobson*. *See* 197 U.S. at 30–39. Rather, "[t]o find that

the vaccination mandate was aimed at controlling the disease, the [Supreme C]ourt took 'judicial notice of the fact [such was] the common belief of the people of the state ... as well as [ ] most members of the medical profession ... our state, and in most civilized nations for generations.'" *Boysen*, 2024 WL 3888682, at *6 (citing *Jacobson*, 197 U.S. at 34).

In a related case, *Health Freedom Defense Fund, Inc. v. Carvalho*, the plaintiffs adopted a different tactic than pointing to FDA approval status—alleging that the COVID-19 vaccine is not a "traditional" vaccine because it mitigates symptoms but does not "prevent the spread" of COVID-19, as traditional vaccines at issue in *Jacobson* are meant to do. 104 F.4th 715, 725 (9th Cir. 2024) *reh'g en banc granted, opinion vacated*, No. 22-55908, 2025 WL 380831 (9th Cir. Feb. 4, 2025). The Ninth Circuit initially ruled that allegation must be accepted as true because the appellee in *Health Freedom* failed to sufficiently provide the Ninth Circuit with judicially-noticeable facts demonstrating that allegation implausible. *See id*. But the Ninth Circuit has apparently realized this decision was made in error because it has since vacated that opinion and granted rehearing en banc. 2025 WL 380831.

In any event, this case is unlike *Health Freedom* because Appellants do not specifically allege the COVID-19 vaccine is not rationally related to preventing the

spread of COVID-19. *See, e.g.,* Appellants' Br. at 56 (focusing on statutes applying to investigational drugs). In fact, Appellants explicitly allege that combating the spread of the COVID-19 virus was Houston Methodist's motive behind its immunization requirement. ROA.1169. Accordingly, even if it were good law, *Carvolho* is inapposite. *See, e.g., Children's Health Def., Inc. v. Rutgers, the State Univ. of N.J.*, 93 F.4th 66, 79 (3d Cir.), *cert. denied sub nom.*, 144 S. Ct. 2688, 219 L. Ed. 2d 1302 (2024) (rejecting attempted distinctions from *Jacobson*).

Further, the record and judicially-noticeable facts clearly demonstrate the "common belief" that COVID-19 vaccines and vaccination requirements were aimed at preventing the spread of COVID-19, refuting any notion that the COVID-19 vaccine is not a traditional vaccine subject to the controlling precedent of *Jacobson. See* 21 U.S.C. § 360bbb-3(c)(2)(A)(i) (stating EUA drugs are only authorized if they "may be effective in diagnosing, treating, or preventing ... [a] disease or condition;" 21 U.S.C. § 360bbb-3(k) (stating EUA drugs "shall not be considered to constitute a clinical investigation"); ROA.339 (showing COVID-19 vaccine is approved "for active immunization to prevent COVID-19 in individuals 16 years of age and older."); ROA.333 (showing Houston Methodist policy of using COVID-19 vaccine to create a safe environment, free of infection/transmission of

disease and to protect our patients, employees, and the community from Sars-Cov-2 (COVID-19) infection); Centers for Disease Control and Prevention ("CDC"), National Center for Immunization and Respiratory Diseases, *available at* https://www.cdc.gov/ncird/whats-new/covid-19-accineeffectiveness.html#:~:text =CDC%20data%20show%20t hat%20vaccination,1%20variant (last visited January 20, 2025) (showing effectiveness and interest in COVID-19 vaccine preventing infection).[6] Just as in *Boysen v. PeaceHealth*, "the record is replete with judicially-noticeable facts that Pfizer-BioNTech COVID-19 vaccine is a vaccine—as that term is used in *Jacobson*—'as a preventative' of Covid-19." 2024 WL 3888682 at *5.

Finally, even if *Jacobson* did not directly foreclose Appellants' legal theory, Appellants have not alleged they were "forcibly vaccinated or forcibly given medical treatment, have not identified an articulable fundamental right at issue in this case, and have not directed the Court to any legal authority that supports their position." *Compare* Appellants' Br. *with Sweeney v. Univ. of Colorado Hosp. Auth.*, No. 23-CV-02451-NYW-MDB, 2024 WL 3713835, at *14 (D. Colo. July 12, 2024) (rejecting reasoning of *Health Freedom*). They certainly have not demonstrated any conceivable

---

[6] Courts can take judicial notice of government websites. *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam). The accuracy of the CDC website—showing clearly an interest in using COVID-19 vaccines to combat the spread of COVID-19 and not merely an interest in using the vaccine to treat symptoms—cannot be reasonably questioned. *See* Fed. R. Evid. 201(b).

substantive due process deprivation by Daniel. Appellants' Br. at 10, 65. For these reasons, the district court correctly dismissed Appellants' constitutional claims. Appellants did not, contrary to their argument, allege facts showing any reasonable expectation of discovery revealing evidence of their claims or elements. *See* Appellants' Br. at 51 (citing *Flagg v. Stryker Corp.*, 647 F. App'x 314, 316 (5th Cir. 2016)). The district court's dismissal should be affirmed.

### E.  The district court did not abuse its discretion by not granting Appellants leave to amend.

The district court did not abuse its discretion in dismissing all federal claims with prejudice and not granting leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave should be freely given when justice requires, but this principle "is not a mechanical absolute and the circumstances and terms upon which such leave is to be 'freely given' is committed to the informed, careful judgment and discretion of the Trial Judge as he superintends the development of a cause toward its ultimate disposition." *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 468 (5th Cir. 1967) (quoting *Lone Star Motor Imp., Inc. v. Citroen Cars Corp.*, 288 F.2d 69, 75 (5th Cir. 1961)). Relevant considerations include undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the

amendment. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)). "Pleadings review is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right." *United States ex rel. Adrian v. Regents of Univ. of Calif.*, 363 F.3d 398, 404 (5th Cir. 2004).

The plaintiffs did not seek leave to amend in response to Daniel's Motion to Dismiss. ROA.1320–1461. They also amended or corrected their Complaint three times in an attempt to plead a viable claim against state actors—one of which was notably to replace the Texas Workforce Commission with a state officer after Defendants' arguments educated them of at least some of the requirements of *Ex parte Young. See* ROA.199, 1013–30, 1444–60. Now on appeal, they appear to argue only that, while they did amend their claims with respect to the State Appellees— implicitly admitting they have no basis to seek leave to amend the claims against them—they did not amend their claims against the Houston Methodist Appellees. Appellants' Br. at 65–66.

Because Appellants do not adequately brief an argument explaining why they should be permitted to amend claims brought against the State Appellees, they have again waived and abandoned that argument for the reasons previously discussed. Even if the Court permits the Appellants an opportunity to amend their claims

against the Houston Methodist Appellees, it should deny any request to amend—to the extent they even seek it—the claims against Daniel. Alternatively, any request to amend should be denied because they have already been given opportunity to amend their claims against the State Appellees and amendment would be futile. As discussed above, more specific factual allegations would have no impact on the legal issues barring their claims. Therefore, the Court should no longer entertain the Appellants' inefficient use of the parties' and Court's resources. *See Germain v. Howard*, 556 F.3d 261, 264 (5th Cir. 2009) (upholding dismissal with prejudice and denial of leave to amend in light of the fact that plaintiffs "had several opportunities to state their best case"); *Blair v. Deutsche Bank Nat. Tr. Co.*, 609 F. App'x 767, 770 (5th Cir. 2015) (holding dismissal without leave to amend was not abuse of discretion when more specific allegations would not cure legal defect).

## CONCLUSION

In conclusion, Appellants waived their claims against the State Appellees by abandonment, relegating the discussion of their grievance with Daniel to cursory, throwaway lines. Even if they had given them adequate attention, their claims are not permitted under the Eleventh Amendment. Even if *Ex parte Young* permitted suit despite the Eleventh Amendment, they have not stated a cognizable claim under

any federal statute or the U.S. Constitution against Daniel. For the foregoing reasons, the State Appellees respectfully request that this Court affirm the lower court's dismissals and decline to grant Appellants any opportunity to amend their Complaint.

Dated: February 26, 2025        Respectfully submitted.

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

*/s/ Joseph Keeney*
JOSEPH KEENEY
Assistant Attorney General
Texas Bar No. 24092616
Office of the Attorney General
General Litigation Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548

(512) 463-2120
FAX (512) 320-0667
joseph.keeney@oag.texas.gov
*Counsel for Defendants-Appellees*
*Cecile Erwin Young and Bryan Daniel*


### CERTIFICATE OF SERVICE

I certify the service of this document by ECF on February 26, 2025, upon all counsel of record.


*/s/ Joseph Keeney*
Joseph Keeney
Counsel for Defendants-Appellees
Cecile Erwin Young and Bryan Daniel

## CERTIFICATE OF COMPLIANCE

I hereby certify that (1) required privacy redaction have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document is protected by the OAG's CrowdStrike software and is free of viruses.

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because Microsoft Word reports that it contains 8,053 words, excluding the material not counted under the rule, and complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it was prepared in Microsoft Word using a 14-point proportionally spaced typeface (14-point Equity).

*/s/ Joseph Keeney*
Joseph Keeney
Counsel for Defendants-Appellees
Cecile Erwin Young and Bryan Daniel