No. 24-20483

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

Jennifer Bridges; Breann Emshoff; Amanda Lofton; Brett Cook; Stefanie Martinez; Et al,

Plaintiffs-Appellants,

v.

The Methodist Hospital, doing business as The Methodist Hospital System; Houston Methodist The Woodlands Hospital; Methodist Health Centers, doing business as Houston Methodist Baytown Hospital, doing business as Houston Methodist Sugar Land Hospital, doing business as Houston Methodist The Woodlands Hospital, doing business as Houston Methodist Willowbrook Hospital; Marc L. Boom; Robert A. Phillips; Et al,

Defendants-Appellees.

On Appeal from the United States District Court
for the Southern District of Texas
No.  4:23-cv-1699
Hon. George C. Hanks, Jr.

---

### APPELLANTS' REPLY BRIEF

---

David Joseph Schexnaydre
Schexnaydre Law Firm, LLC
2895 Hwy 190, Ste 212
Mandeville, LA 70471
Phone: 985-292-2020
Email: david@schexnaydre.com
*Attorneys for Appellants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................... 3

I.     Introduction ................................................................ 4

II.    Argument ................................................................... 11

       A.     Houston Methodist's Policy was Unconstitutional .............................11

       B.     Houston Methodist, The Organization, Not the Employer ............... 16

       C.     State Action ........................................................... 20

       D.     Res Judicata ........................................................... 26

       E.     Qualified Immunity ................................................... 28

       F.     Bob Nevens ............................................................ 29

III.          Conclusion ............................................................ 30

              Certificate of Service ................................................ 31

              Certificate of Compliance with Rule 32(g) ...................... 31

# TABLE OF AUTHORITIES

## Cases

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970)................................................. 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................................... 7

*Blum v. Yaretsky*, 457 U.S. 991, 102 S. Ct. 2777 (1982)................................... 23, 24

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ....................................................... 15

*Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961) ....................... 24, 25

*Canterbury v. Spence*, 464 F.2d 772 (D.C. Cir. 1972) ............................................. 9

*Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261 (1990).............. 12, 14

*Doe v. Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004) ................................................ 15

*Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246 (2009) ............................. 28

*Giron v. Corrections Corp. of America*, 14 F. Supp. 2d 1245 (D.N.M. 1998)....... 17

*Groten v. California*, 251 F.3d 844 (9th Cir. 2001) ............................................... 29

*Hansberry v. Lee*, 311 U.S. 32 (1940).................................................................... 27

*Harlow v. Fitzgerald,* 457 U. S. 800 (1982)........................................................... 29

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974) .............................. 22, 24

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905) ...................................................... 6

*Jatoi v. Hurst-Euless-Bedford Hosp. Authority*, 807 F.2d 1214 (5th Cir. 1987).... 26

*Julapalli v. Boom*, No. 24-20276 (5th Cir. Jan. 28, 2025)...................................... 21

*Lawlor v. Nat'l Screen Serv.*, 349 U.S. 322 (1955) ............................................... 27

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) .......................................... 10

*Perry v. Sindermann*, 408 U.S. 593 (1972) ........................................................... 29

*PHH Mortgage Corp. v. Old Republic*, 80 F.4th 555 (5th Cir., Aug. 30, 2023) ...... 7

*Richardson v. McKnight*, 521 U.S. 399, 117 S. Ct. 2100 (1997) .......................... 29

*Speiser v. Randall*, 357 U.S. 513 (1958) ............................................................... 16

*Terry v. Adams*, 345 U.S. 461, 73 S. Ct. 809, 97 L. Ed. 1152 (1953) ................... 17

*Turner v. City of Memphis,* 369 U. S. 350 (1962) .................................................. 25

*U.S. v. Arlen*, 947 F.2d 139 (5th Cir. 1991)............................................................. 5

*Wyatt v. Cole*, 504 U.S. 158 (1992).........................................................................28

## Statutes

10 U.S.C. § 980................................................................................................... 15

21 U.S.C. § 331..................................................................................................... 5

21 U.S.C. § 355(a) ............................................................................................... 4

21 U.S.C. § 360bbb-3(a)(2)(A).......................................................................... 6

21 U.S.C. § 360bbb-3(e)(1)(A)(i)..................................................................... 18

21 U.S.C. § 360bbb-3(l) .................................................................................... 19

## Regulations

21 C.F.R. § 312.7................................................................................................. 5

## I.    Introduction

Houston Methodist's assertion that "the specific conduct of which plaintiffs here complain is 'Houston Methodist's enforcement of its vaccination policy'" (Doc. 52, p. 48) is deceptively misleading. First, that is not the specific conduct in question. The conduct in question is deprivation of Constitutional and statutory rights to refuse EUA/PREP Act investigational drugs that have no legal indication as a vaccine.

Second, the claim that they are enforcing a "vaccination policy" implies that the drugs were vaccines—a claim the record definitively establishes is false. First, Plaintiffs alleged that the drugs are "not licensed for any indication," which means they do not have a legal indication as a "vaccine." (ROA.1122, FN1) Second, Defendants were bound by the Health and Human Services Secretary's ("Secretary") explicit directive and unambiguous language that Defendants' "descriptive printed matter, advertising, and promotional material relating to the use of the Pfizer-BioNTech COVID 19 Vaccine clearly and conspicuously shall state that this product has not been approved or licensed by FDA." (ROA.1729) Third, the Secretary published his official position in the Federal Register that drugs were "not licensed for any indication," including the indication as a vaccine. (ROA.1507) A vaccine is a drug licensed by the FDA that is legally indicated as a vaccine according to its labeling within the meaning of 21 U.S.C. § 355(a). None of the drugs available to Plaintiffs to comply with Houston Methodist's policy were legally indicated as a

vaccine and therefore, laws and case law relating to licensed vaccines is not before this Court. (ROA.1140 ¶206)

The district court, not accepting Plaintiffs' allegations as true, also implied that the FDA approved the drugs as vaccines, stating, "Plaintiffs do not have a fundamental right to refuse vaccination." (ROA.1804) That ruling erroneously assigns the drugs a legal indication as vaccines when the FDA explicitly stated they were "not licensed for any legal indication." (ROA.1122, FN1) Statutory and case law relating to vaccination requirements are inapplicable because Plaintiffs have alleged that the drugs are not vaccines and, by law, have no legal indication as vaccines. Moreover, the constitutional implications of this misclassification are profound. It is well-settled law that a medical professional promoting a drug outside of its approved labeling with the intent to mislead or defraud a person of the drug's legal indication violates 21 U.S.C. § 331 (misbranding) (*U.S. v. Arlen*, 947 F.2d 139 (5th Cir. 1991)). The drugs' labels do not show a legal indication as a vaccine. Thus, Defendants cannot promote the drugs as having such a legal indication, impliedly or directly. Specifically, because the drugs are investigational new drugs, the manufacturer and persons acting on behalf of the manufacturer under EUA may not "shall not represent in a promotional context that an investigational new drug is safe or effective for the purposes for which it is under investigation or otherwise promote the drug." (21 C.F.R. § 312.7)

Moreover, the Secretary cannot issue an Emergency Use Authorization ("EUA") for a drug licensed for its intended emergency use. (21 U.S.C. §§ 360bbb-3(a)(2)(A),(B)). Thus, an FDA-licensed COVID-19 vaccine can never be issued an EUA as a COVID-19 vaccine because it already has a licensed indication for that use. Therefore, the district court's ruling and Houston Methodist's brief implies that Secretary Xavier Becerra engaged in misbranding by issuing EUAs for a licensed vaccine because it promotes the use of the drug outside of its approved labeling and that Secretary Kennedy is continuing with that misbranding by maintaining the EUAs.

The drug's classification is the gravamen of the case because that classification determines the laws applicable to the instant action. The district court and Defendants mischaracterized Plaintiffs' allegations by replacing the phrase "investigational new drug" with the word "vaccine." The laws applicable to an FDA-licensed vaccine do not apply to EUA/PREP Act investigational drugs, and *vice versa*.

Because the district court's ruling mischaracterizes the Secretary's official classification of the drug from investigational as vaccines, he erroneously held that *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) had controlling authority over the case. Had the district court properly accepted Plaintiffs' allegations as true—that the drugs were investigational and that the Executive Branch owned them until human

6

administration, requiring the Executive Branch to obtain Plaintiffs' legally effective informed consent as mandated by Congress, which it did through delegation to Texas who delegated that function to Houston Methodist—he could not have dismissed Plaintiffs' Corrected Second Amended Complaint ("Complaint") under Rule 12(b)(6). This represents a clear violation of constitutional due process protections. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring courts to accept factual allegations as true at the pleading stage).

Although Plaintiffs' Complaint references the drugs as investigational on 73 pages and Count One is titled "Subjected to Investigational Drug Use," neither the district court's ruling nor Houston Methodist in their answering brief referenced the drugs according to their legal classification as "investigational." The district court avoided Plaintiffs' allegation relating to the drugs' classification, stating, "Plaintiffs argue that there is a Constitutionally relevant distinction between mandatory use of a 'licensed vaccine' and mandatory use of an 'EUA drug' like the COVID-19 vaccine." (ROA.1708). Use of the phrase, "like the COVID-19 vaccine," is misleading because it again refers to the incorrect drug classification of "vaccine," which is the gravamen of the case. "A district court abuses its discretion when it does not consider 'a relevant factor that should have been given significant weight.'" *PHH Mortgage Corp. v. Old Republic*, 80 F.4th 555 (5th Cir., Aug. 30, 2023). To be

abundantly clear, on April 1, 2021, when Houston Methodist issued its illegal policy, the FDA had not licensed any COVID-19 drug with a legal indication as a vaccine, and it would not do so until August 23, 2021, for COMIRNATY®, which Pfizer never shipped until 2024.

Houston Methodist's brief continues to avoid discussing the drug classification issue and the laws that governed Houston Methodist's vaccination policy simply because it would demonstrate that Houston Methodist violated its duties under the CDC COVID-19 Vaccination Program ("CDC Program") and Federal Wide Assurance program.

The drugs' classification implicates Constitutional rights, federal laws and regulations, and federal agreements regulating investigational drugs. Defendants are prohibited from pressuring an individual to use an EUA/PREP Act investigational drug, nor can they punish anyone for refusing. These facts and the fact that the Food, Drug, and Cosmetic Act did not come into being until 33 years after *Jacobson*, demonstrates that the 1905 decision is not controlling in the case at bar.

Moreover, Defendants' duty to inform Plaintiffs that the drugs were not licensed, of their risks, benefits, alternatives, and of their right to refuse goes to the heart of legally effective informed consent. "True consent to what happens to one's self is the informed exercise of a choice, and that entails an opportunity to evaluate

knowledgeably the options available and the risks attendant upon each." *Canterbury v. Spence*, 464 F.2d 772, 780 (D.C. Cir. 1972).

When Defendant Marc Boom informed Plaintiffs that "[t]he COVID-19 vaccines have proven through rigorous trials to be very safe and effective and are not experimental" and that "it is legal for health care institutions to mandate vaccines, as we have done with the flu vaccine since 2009" then it is plain to see that he intended to deceive Plaintiffs, to deprive them of their right to know that the drugs were not vaccines, not licensed by the FDA for their safety or efficacy, but only under EUA and PREP Act immunity, and were investigational without any licensed indication to inoculate them from any virus. Such deception vitiates legally effective informed consent. Moreover, under Marc Boom's legal obligations under the CDC and FWA programs, he could neither mandate the drugs nor punish Plaintiffs for refusing, demonstrating that the drugs were *not* like past flu vaccine requirements. To make matters worse, Dr. Boom and Houston Methodist attempt this same deception on this Court in their response brief.

This district court's ruling violates the Separation of Powers doctrine by amending Executive Branch actions without explanation, rendering federal programs nonfunctional, and nullifying the very meaning of legally effective informed consent (see, *infra*). The legally effective informed consent standard regulates the pharmaceutical industry and underpins the Secretary's exclusive

authority to grant expanded access to unlicensed drugs and the conditions under which they are introduced into commerce.

Plaintiffs specifically allege that under the CDC Program, the United States Government ("USG") owned all of the drugs and had a duty to honor Plaintiffs' constitutionally protected right to refuse the EUA/PREP Act investigational drugs. The USG delegated that duty to Texas, who, in turn, delegated the duty to Houston Methodist when it signed the CDC Provider Agreement, agreeing to be "part of a collaboration" with the state government and the CDC in the joint conduct of distributing and administering EUA/PREP Act investigational drugs. (ROA.1239)

Despite no Defendant disputing Plaintiffs' allegation that the USG, Texas, and Houston Methodist owed Plaintiffs the duty of obtaining their legally effective informed consent, the district court implied that the drugs were something they were not and erroneously applied statutory and case law that only relate to licensed drugs.

The district court's ruling must be reversed and remanded for further proceedings to protect the Constitutional power of the federal Executive and Legislative Branches and the Constitutional rights of the Plaintiffs and to ensure that Plaintiffs have their merits fairly judged. As stated in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), "As our decisions have emphasized time and again, the Due Process Clause grants the aggrieved party the opportunity to present his case and **have its merits fairly judged**."(emphasis added)

## II.     Argument

### A. Houston Methodist's Policy was Unconstitutional

Defendants assert:

• Houston Methodist adopted a policy requiring its employees to be vaccinated against COVID-19, subject to religious and medical exemptions" (Doc. 52, p. 21),

• Houston Methodist's "policies for employees and contractors did not require them to receive the vaccine from Houston Methodist" (*Id.* p. 22),

• "the vast majority—105 of 112 plaintiffs—never received any COVID-19 vaccination" (*Id.* p. 23), and

• "No plaintiff has pleaded that he or she requested an exemption that was denied." (*Id.* p. 23).

Houston Methodist's assertions fundamentally mischaracterize both the legal status of the drugs and the legal framework governing their administration. First, no drugs existed with a legal indication to inoculate a person from the Coronavirus, thus the statement "vaccinated against COVID-19" is deliberately misleading. As a matter of black letter law, Houston Methodist could not issue the policy because the drugs were classified as investigational without violating its FWA, an assertion the district court failed to address.

Moreover, Houston Methodist willfully agreed to execute the Secretary's conditions of authorization under "any EUA" via Sections 12(a) and (b) of the Provider Agreement (ROA.327), which required Houston's CEO and CMO

(ROA.325) to inform potential recipients of their statutory entitlement to accept or refuse. Houston Methodist's mandate caused all Plaintiffs to become potential recipients against their will.

Houston Methodist is not the Secretary but merely an agent obligated to execute the Secretary's conditions of authorization. Therefore, Houston Methodist lacks any authority to establish a condition requiring Plaintiffs to seek a religious or medical exemption to exercise their federally guaranteed entitlement right to refuse, which right Defendants willfully agreed to protect. Such a claim fundamentally misrepresents their delegated authority. *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261 (1990) recognizes, "The logical corollary of the doctrine of informed consent is that the patient generally possesses the right not to consent, that is, to refuse treatment."

Third, Houston Methodist's defense that its policy did not "require [Plaintiffs] to receive the vaccine from Houston Methodist" is legally untenable. Houston Methodist operated under binding legal obligations under the CDC Program, Federal Wide Assurance (FWA), and Institutional Review Board (IRB) to obtain Plaintiffs' legally effective informed consent when involving them with federally funded investigational drugs—obligations Houston Methodist notably does not dispute in their opening brief nor in their responsive pleadings at the district level. Legally effective informed consent (ROA.1358) restricts Houston Methodist from

pressuring Plaintiffs to inject investigational medical treatments, imputing penalties, or withholding benefits to which potential recipients are entitled when refusing such treatment. Houston Methodist cannot determine which person they will or will not obtain legally effective informed consent from, and as detailed under the State Action heading (see, *infra*), they could not engage in a contractual relationship with either the USG or Texas conditioned on it exempting employees, contractors, vendors, or volunteers of their legally effective informed consent rights. Therefore, physical administration is wholly immaterial to Plaintiffs' claims and cannot form a legitimate basis for Houston Methodist's defense, as they effectively argue they need not comply with their promised federal obligations under the CDC and FWA programs. This explains why Houston Methodist strategically declined to dispute the Plaintiffs' allegations relating to their FWA contract #00000438.

The legally effective informed consent standard conclusively demonstrates that Houston Methodist's claim that it "did not subject plaintiffs to any 'unwanted medical treatment'" is false. (Doc 52, p. 62) Houston Methodist unquestionably placed Plaintiffs under threat of penalty (i.e., subjected them) if they refused to receive unwanted investigational medical treatments, thereby depriving Plaintiffs of their legally effective informed consent rights.

The district court's reliance on *Pearson* that the "'right to refuse' the vaccine never came into being because none of the Shriners parties ever actually

administered the COVID-19 vaccination to any of the plaintiffs" misapplies the legally effective informed consent standard. (ROA.1797) This misapplication further exposes the falsity of Houston Methodist's claim that "if plaintiffs had a right to refuse being injected, they successfully exercised that right by not getting injected. Plaintiffs would have to be injected in order to have claims that they were deprived of any right to refuse being injected." (Doc. 52, p. 58)

<u>Punishment for exercising a right is deprivation of the right</u>. To claim that there is no cause of action for punishing a person for exercising the right to refuse simply because they did not surrender their right to refuse is nonsensical and leads to an absurd result. Moreover, the deprivation was the loss of the Plaintiffs' legally effective informed consent rights, which meant they had a right to never come under pressure or punishment when exercising the right.

By strategically avoiding any discussion of the legally effective informed consent doctrine—which appears to be a matter of first impression before this Court—Defendants perpetuate claims that are patently false under established precedent in *Cruzan, supra*. Defendants indisputably deprived Plaintiffs of their legally effective informed consent right not to be pressured or punished for refusing EUA/PREP Act investigational drugs. The constitutional protection at issue is not simply the right to refuse, but rather the right to refuse without consequence—a right Houston Methodist explicitly promised to honor under both the CDC Program and

FWA program, creating a legitimate property interest for Plaintiffs protected under *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Therefore, under the CDC Program, the EUA Statute, 10 U.S.C. § 980[1] and their FWA, Defendants were under a legal obligation never to pressure Plaintiffs to participate in the CDC Program and be injected with its EUA/PREP Act investigational drugs, and not to punish such refusal. The policy, as applied, deprived Plaintiffs' of their Constitutional rights of bodily autonomy (ROA.1380), programmatic rights under the CDC Program, the right to refuse under the EUA Statute, and a voluntary PREP Act program.

Judge Sullivan vacated the DoD's involuntary investigational drug requirement for military members and civilians, stating, "Accordingly, the involuntary anthrax vaccination program, as applied to all persons, is rendered illegal absent informed consent or a Presidential waiver." *Doe v. Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004). Notably, the federal government's Executive Branch can only issue a waiver of informed consent for military members relating to a specific military mission, but it can never waive the informed consent rights of civilians such

---

[1] Plaintiffs alleged that "The Department of Defense (DoD) procured 100m doses of Pfizer-BioNTech COVID-19 Vaccine (investigational new drug) for distribution among the States, including Texas," which required the USG, the owner of the drugs, to ensure its recruited agents obtained Plaintiffs' informed consent. The Statute is tied to DoD-appropriated funding, not DoD activities, as suggested by Houston Methodist (Doc. 52, p. 36). Congress cannot require a person to obtain informed consent if it first did not confer upon an individual the property right to give it.

as Plaintiffs involved in the CDC program. Moreover, the Executive Branch cannot use Texas to use Houston Methodist to accomplish a result that the Executive Branch cannot command directly. *Speiser v. Randall*, 357 U.S. 513 (1958).

**B. Houston Methodist, The Organization, Not the Employer**

Houston Methodist attempts to avoid liability by claiming that, as a private employer, it can require its employees (i.e., individuals) to receive investigational drug treatments involuntarily. (Doc. 52, p. 18) However, it omitted that its mandate also applied to non-employees.

First, as discussed herein, it cannot mandate that an employee use investigational drugs without violating its FWA agreement (ROA.1151) because it promised the Secretary that it would never subject an individual to an investigational drug, **irrespective of its relationship with the individual**. For the same reason, it cannot mandate that an individual participate in the CDC Program involuntarily.

Second, Houston Methodist agreed to perform for Texas and the USG under the CDC and FWA programs. It holds no authority to distinguish between individuals who are not employees, volunteers, contractors, or vendors and those who are, when choosing, those who will or will not be able to exercise rights it agreed to protect for the government specifically because it is the government who owes Plaintiffs their constitutional guarantees.

Houston Methodist was not obligated to participate in the CDC and FWA programs. Still, it willfully chose to engage in joint action with Texas and the USG, and it cannot claim it is not required to perform governmental functions on behalf of all individuals simply because it is a private organization or employer.

Houston Methodist's claim that the EUA Statute "does not regulate employment" (Doc 52, p. 34) is incorrect for the above reasons. Additionally, because Houston Methodist is the Organization that promised to execute the Secretary's conditions of authorization under each EUA, and the moment it mandated Plaintiffs to participate in the CDC Program, it caused Plaintiffs to become potential recipients against their will. At that time, as a recruited government actor, it should have informed Plaintiffs of their right to refuse without consequence. *Giron v. Corrections Corp. of America*, 14 F. Supp. 2d 1245 (D.N.M. 1998) "If a state government must satisfy certain constitutional obligations when carrying out its functions, it cannot avoid those obligations and deprive individuals of their constitutionally protected rights by delegating governmental functions to the private sector." See *Terry v. Adams*, 345 U.S. 461, 73 S. Ct. 809, 97 L. Ed. 1152 (1953).

Defendants cite the *Norris* ruling that the district court relied upon to rule that the EUA does not apply to Houston Methodist as a person who issues a mandate. (Doc. 52, p. 34) First, that is a conclusory ruling because facts alleged in the instant action determine if the EUA applies to Houston Methodist and whether they could

subject Plaintiffs to EUA use. Neither the EUA Statute nor the *Norris* ruling answers that question, only the EUA letters.

The *Norris* ruling violates the Separation of Powers doctrine. The EUA Statute is clear that the Secretary must only ensure "health care professionals administering the product are informed" of the product's investigational status, not that the healthcare professional must conduct informed consent protocols. 21 U.S.C. §360bbb-3(e)(1)(A)(i). The *Norris* ruling stripped the Secretary of his exclusive constitutional authority to determine which person would execute which function to help him meet his statutory mandate. The *Norris* ruling limited the Secretary's authority to issue conditions of authorization only to "medical providers who administer the vaccine," which effectively renders current EUAs nonfunctional, which the district court in the case at bar affirmed. The current EUAs required Texas' HHS Department to ensure that all individuals were informed of their right to refuse and to identify persons to help the State with that objective by requiring the recruited party to sign the Provider Agreement and assume the role of vaccination provider and to ensure that provider complied with each EUA.

Houston Methodist, the "Organization" under the Provider Agreement, and its CEO and CMO who signed the agreement were under legal obligations to ensure all individuals involved with the CDC program and EUA drugs were made aware of their right to refuse. The district court removed the duties placed upon Texas and

Houston Methodist and assigned them to fictitious "medical providers" as if those providers working as employees for Houston Methodist have any authority to bind the Organization to any EUA. Therefore, it was Texas and Houston Methodist's CEO and CMO who were bound to execute the Secretary's conditions of authorization, and nothing in the EUA statute limits how the Secretary will ensure how a person will be informed of their right to refuse. Moreover, the EUA Statute is clear: the Secretary cannot mandate nonconsensual participation in authorized activities, and no person must inform the Secretary that they will not participate; thus, the Supremacy Clause preempts recruited agents from amending the EUA Statute (21 U.S.C. § 360bbb-3(l)) to require nonconsensual participation of any person.

Limiting informed consent protocols only to medical providers physically administering an EUA product is an error of law and intrudes upon acts of Congress. This is no small matter for this Court to consider. Hospitals currently administer products under EUA regularly, and holding that only persons administering the EUA product are responsible for obtaining informed consent removes liability from the Organization and places liability onto unsuspecting medical providers who did not agree to perform under the EUA and who cannot be required to perform under it. The district court's ruling places a duty upon persons who may or may not have agreed to perform under the EUA. The ruling goes too far and should be reined in before it leads to absurd results.

## C. State Action

Defendant cites the district court's ruling, which cited *Pearson* stating, Plaintiffs "failed to allege any manner in which the termination of their employment may have constituted state action." (Doc. 52, p. 47). Count One does not claim a deprivation of employment is the state action; it claims a deprivation of the right to refuse investigational drugs without consequence is the state action, specifically because it engaged in a state-enforced custom when applying consequences. Moreover, Houston Methodist owed Plaintiffs' Fourteenth Amendment obligations because it acted exclusively on the State's behalf under the CDC Program.

The district court relegated state action analysis to a footnote, citing *Pearson*, stating, "Shriners contends that the termination decision was 'unmoored' from any responsibilities it may have had as a medical provider under the EUA….Instead, Shriners terminated the plaintiffs' employment because they violated Shriners' COVID-19 Policy—a policy Shriners enacted as a private employer and one that stands wholly apart from any action it took as a vaccine provider." (ROA.1773)

*Pearson*, on appeal before this Court and argued on February 24, 2025, plainly stated that "Shriners contends…," demonstrating that *Pearson* only accepted Defendants' version of facts as true under Rule 12(b)(6). Moreover, it engaged in a critical fact-finding error because it applied state action only to the EUA Statute and not to the CDC Program.

Houston Methodist correctly states "[t]o determine whether a private actor, Houston Methodist, acted 'under color of state law,' the 'critical inquiry' is 'whether the alleged infringement of federal rights can be fairly attributable to the State.'" *Julapalli v. Boom*, No. 24-20276, 2025 WL 314123, at *2 (5th Cir. Jan. 28, 2025)

Plaintiffs alleged, in part, the following state action claims:

(1) "After the COVID-19 Public Health Emergency declaration, the HHS Secretary authorized the emergency unlicensed use of drugs, biologics, and devices under the Emergency Use Authorization (EUA) statute and listed them as countermeasures under the PREP Act. President Biden purchased those products and established the CDC COVID-19 Vaccination Program for the explicit purpose of distributing the federally funded COVID-19 drugs (federal property) as part of a collaboration under the States' immunization cooperative agreement with the CDC. Governor Abbott volunteered Texas to participate in the program under the terms and conditions established by the federal government for the State and HHSC-authorized State Actors to help it achieve the goal of administering the federal COVID-19 drugs." (ROA.1641).

(2) "Texas was bound to ensure Organizations it authorized to participate complied with the Program's requirements and with the Fourteenth Amendment."(ROA.1048)

(3) "HM Defendants voluntarily joined Texas to help it achieve its goal of distributing the federal government's COVID-19 property and conducting joint research activities also required of the federal government" (ROA.1049)

(4) "Although the program states it is a "Vaccination Program" (hereinafter referred to as "CDC Vaccination Program"), the federal government has not distributed any FDA-licensed COVID-19 vaccines. Instead, it has relied exclusively on unlicensed COVID-19 EUA drugs for the program's administration." (ROA.1388)

(5) "This is a case for damages against Houston Methodist…for illegally and unconstitutionally penalizing individuals exercising their statutory right to refuse an investigational drug without incurring a penalty or losing a benefit to which they are otherwise entitled" (ROA.1392)

(6) "Houston Methodist volunteered to act on behalf of the State to provide the public function of administering the State's COVID-19 emergency immunization program.: (ROA.1394)

(7) "On April 01, 2021 Houston Methodist, Marc L. Boom, Robert A. Phillips, and the Board of Directors, acting under the color of law, illegally subjected Plaintiffs to investigational drug use under threat of penalty outside of Plaintiffs' free will and voluntary consent." (ROA.1410)

(8) "The State provided Houston Methodist with rights and duties "with an unmistakable focus on the benefitted class" (ROA.1794)

(9) "Houston Methodist and the State are in a symbiotic relationship to obtain the legally effective informed consent of potential recipients for the success of the State's COVID-19 immunization program" (ROA.1400)

(10)     "The State did not provide for an alternative to comply with federal statutory obligations of obtaining legally effective informed consent apart from authorized private parties engaging in that state action on its behalf" (ROA.1400)

(11)     "The State relies on State agents, such as Houston Methodist, to achieve the goals of the State's COVID-19 immunization program." (ROA.1401)

Therefore, based on well-settled law, Houston Methodist was acting under color of law when engaging in the challenged conduct because:

1.  the program was created and entirely funded by the federal government's Executive Branch to serve a public purpose,

2.  the program operated under the exclusive authority of the state who operated under the exclusive authority of the federal government, and was responsible for compliance among its recruited agents. See *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974) (finding of state responsibility leads the court

to find the private party is engaged in state action); *Blum v. Yaretsky*, 457 U.S. 991, 102 S. Ct. 2777 (1982) ("constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains.")

3. the CDC program was subject to the FWA program requiring legally effective informed consent,

4. Texas financially benefits from Houston Methodist's involvement,

5. Houston Methodist financially benefits by helping the State perform its governmental function,

6. the CDC Program's successful outcome is dependent upon the State and Houston Methodist's joint conduct,

7. the link between Houston Methodist and the State is made clear by the State being responsible for the Program, and recruiting Houston Methodist to sign the Provider Agreement and help the State perform the governmental functions of the Program,

8. the State was responsible for ensuring Houston Methodist complied with the Program in full,

9. Texas owed Plaintiffs' legally effective informed consent rights because the USG owed that right to Plaintiffs,

10. emergency declarations and responses to those emergencies are traditional and exclusive governmental functions of the USG and Texas,

11. the CDC Program acted as an emergency public function under which delegated agents owed Plaintiffs' Fourteenth Amendment rights,

12. Houston Methodist deprived Plaintiffs of their Fourteenth Amendment due process rights under the CDC Program by acting on a State enforced custom, (ROA.1415-14-19).

In *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961), the Supreme Court held,

> "But no State may effectively abdicate its responsibilities by either ignoring them or by merely failing to discharge them whatever the motive may be. It is of no consolation to an individual denied the equal protection of the laws that it was done in good faith. Certainly, the conclusions drawn in similar cases by the various Courts of Appeals do not depend upon such a distinction. By its inaction, the Authority, and through it the State, has not only made itself a party to the refusal of service, but has elected to place its power, property and prestige behind the admitted discrimination. The State has so far insinuated itself into a position of interdependence with Eagle that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so "purely private" as to fall without the scope of the Fourteenth Amendment."

In *Jackson v. Metropolitan Edison, supra*, the Court found state action when the function is "traditionally the exclusive prerogative of the State." In *Blum v. Yaretsky, supra*, the Court held, "Faithful adherence to the "state action" requirement of the

Fourteenth Amendment requires careful attention to the gravamen of the plaintiff's complaint," which in the instant action is the right to refuse the EUA/PREP Act investigational drugs the State offered to Plaintiffs through its recruited state agent.

The Court in *Burton, supra,* citing to *Turner v. City of Memphis,* 369 U. S. 350 (1962), held that "private conduct abridging individual rights does no violence to the Equal Protection Clause unless, to some significant extent, the State in any of its manifestations has been found to have become involved in it." In *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970), the Court held, "we think it clear that a 'custom or usage, of (a) State' for purposes of §1983 must have the force of law by virtue of the persistent practices of state officials...This interpretation of custom recognizes that settled practices of state officials may, by imposing sanctions or withholding benefits, transform private predilections into compulsory rules of behavior no less than legislative pronouncements." The Court explained that, "Petitioner will have made out a claim under §1983 for violation of her equal protection rights if she proves that she was refused service by respondent because of a state-enforced custom…" Finally, the Court stated, "[T]he chief complaint is not that the laws of the State are unequal, but that even where the laws are just and equal on their face, yet, by a systematic maladministration of them, or a neglect or refusal to enforce their provisions, a portion of the people are denied equal protection under them."

Therefore, if Plaintiffs' allegations are accepted as true that the Executive Branch owned the drugs until administered to a recipient, then the Executive Branch owed a legal obligation to protect Plaintiffs' right to refuse without consequence, which the Executive Branch delegated that obligation to Texas, which delegated the obligation to Houston Methodist, but Houston Methodist violated that obligation by refusing to obtain Plaintiffs' legally effective informed consent when it acted in accordance with a state-enforced custom of punishing individuals for refusing the drugs. As such, Houston Methodist under § 1983 for acting "under color of law" and depriving Plaintiffs of their Constitutional and federal statutory rights as described in their Counts.

Having a duty to ensure recruited private parties comply with the state's federal mandate, Texas cannot benefit from private party management of the CDC Program and insulate itself from liability when the private entity deprives individuals of their Fourteenth Amendment due process rights under the federal program. *Jatoi v. Hurst-Euless-Bedford Hosp. Authority*, 807 F.2d 1214 (5th Cir. 1987)

Plaintiffs have plausibly alleged that Houston Methodist was acting under color of law for purposes of § 1983.

**D. Res Judicata** (Doc. 52, p. 68)

The first condition of *res judicata* requires the parties to be identical or in privity. In their Motion to Dismiss, Defendants only focused on the parties-plaintiff,

and they ignored the parties-defendant. The case at the bar has 50 plaintiffs and 28 defendants who are not in *Bridges I.* The Supreme Court held, "It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940).

The second condition of *res judicata* requires that the judgment in the prior action be rendered by a court of competent jurisdiction, which Plaintiffs do not contest.

The third condition of *res judicata* mandates that the prior action be concluded by a final judgment on the merits, which the *Bridges I* case did not consider the § 1983 causes of action relating to instant action or the CDC Program.

The fourth and final condition of *res judicata* requires the new action to be based on the same cause of action raised in the first action. However, "a prior judgment is *res judicata* only as to suits involving the same cause of action." *Lawlor v. Nat'l Screen Serv.*, 349 U.S. 322, 329 (1955). Defendants admit that the "*Bridges I* Plaintiffs filed their Original Petition and requested a temporary injunction to **prevent implementation** of the COVID-19 Policy (emphasis added)," whereas Plaintiffs-at-bar seek no such thing.

*Bridges I* was injunctive relief to a private employer's COVID-19 "vaccine" policy while the case at bar seeks damages for the deprivation of Constitutional, contractual, and federal statutory rights that occurred because of the way a state-actor signatory to the CDC Provider Agreement implemented the mandate. Moreover, as discussed in detail (ROA.1038-1041), the common nucleus of facts differs between the two actions.

Some Plaintiffs have Title VII or other civil rights actions, but under *Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246 (2009), an individual can have a § 1983 and civil rights case parallel.

Should there be legitimate *Res Judicata* claims that would require discovery, but for the vast majority of Plaintiffs they are nor barred from proceeding in the instant action.

### E. Qualified Immunity

Houston Methodist, acting under color of law, is not entitled to qualified immunity. The Supreme Court held in *Wyatt v. Cole*, 504 U.S. 158 (1992): "Even if there were sufficient common law support to conclude that [private defendants] should be entitled to a good-faith defense [to suits for unjustified harm arising out of the misuse of governmental processes], that would still not entitle them to what they obtained in the courts below: the qualified *immunity* from suit accorded

government officials under *Harlow* v. *Fitzgerald,* 457 U. S. 800 (1982)." (Emphasis in original)

It is well settled that private parties engaged in state action are not entitled to the qualified immunity defense. *Richardson v. McKnight*, 521 U.S. 399, 117 S. Ct. 2100 (1997). Moreover, a person refusing to perform a ministerial function is not entitled to qualified immunity. *Groten v. California*, 251 F.3d 844 (9th Cir. 2001). The function of accepting Plaintiffs' freely chosen option on Texas's behalf is purely ministerial.

### F. Bob Nevens

Plaintiff, Bob Nevens, requested a declaratory judgment that Texas cannot condition public benefits on the relinquishment of constitutional rights (*Ex parte Young*, 209 U.S. 123 (1908)). Texas cannot require Mr. Nevens to surrender his right to: (1) refuse unwanted investigational drugs, (2) seek judicial relief if injured by a PREP Act countermeasure, (3) privacy, (4) assume greater risks to his safety, health, and financial sustainability, and (5) refuse participation in a federal program or federally funded research activities. The Texas Workforce Commission is attempting to take from Mr. Nevens's property solely because he refused to surrender the Fourteenth Amendment right guaranteed to him under the CDC Program that Texas agreed to protect. *Perry v. Sindermann*, 408 U.S. 593 (1972)

## III.    Conclusion

Because the district court implied that Houston Methodist mandated the use of vaccines and not investigational drugs, under an employer vaccination policy, facts not alleged by Plaintiffs, this Court should reverse and remand for further proceeding with an order that the district court accept Plaintiffs' allegations as true and rule only on those allegations. Additionally, the district court's ruling, as applied to EUA/PREP Act investigational drugs, renders the CDC Program and the FWA program nonfunctional because it sanctions the very conduct the programs prohibit. Additionally, the district court affirming *Norris* that informed consent protocols only apply to the person administering the EUA product strips the HHS Secretary of his powers to decide otherwise.

Respectfully Submitted,

**SCHEXNAYDRE LAW FIRM**

BY: ***s/ David J. Schexnaydre***
DAVID J. SCHEXNAYDRE, T.A.
Texas Bar No. 24076142
2895 Highway 190 • Suite 212
Mandeville, Louisiana 70471
Telephone: (985) 292-2020
Fax: (985) 235-1089
Email: david@schexnaydre.com
Counsel for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

I certify that on March 19, 2025, I presented a copy of the foregoing pleading to the Clerk of Court for filing and uploading to the CM/ECF system, which will send separately notification of such filing to all counsel of record: Dan Patton and Mike Burke of Scott Patton, PC, Constance H. Pfeiffer and Andrew T. Ingram of Yetter Coleman, LLP, and Joseph Keeney of the Office of the Attorney General. Also, Mr. Patton will receive a copy via email at dpatton@scottpattonlaw.com, Ms. Pfeiffer will receive a copy via email at cpfeiffer@yettercoleman.com, Mr. Ingram will receive a copy via email at aingram@yettercoleman.com, and Mr. Keeney will receive a copy via email at joseph.keeney@oag.texas.gov.

*/s/ David Joseph Schexnaydre*
DAVID JOSEPH SCHEXNAYDRE

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because, excluding the parts exempted by FRAP 32(f), this document contains 6,150 words.

This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word for Mac, Version 16.89.1 in Times New Roman 14 point font.

Dated: March 19, 2025

*/s/ David Joseph Schexnaydre*
DAVID JOSEPH SCHEXNAYDRE